1  SPERTUS, LANDES & UMHOFER, LLP
2  James W. Spertus, Esq. (SBN 159825)
   Samuel A. Josephs, Esq. (SBN 284035)
3  1990 South Bundy Dr., Suite 705
   Los Angeles, California 90025
4  Telephone: (310) 826-4700
   Facsimile:  (310) 826-4711
5
6  Attorneys for Defendant Beverly Brown

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 GRANT & EISENHOFER, P.A.,              CASE NO.  17-cv-05968-PSG-PJW

12              Plaintiff,                **DEFENDANT BEVERLY
                                          BROWN'S NOTICE OF
13        v.                              MOTION AND MOTION TO
                                          STRIKE PLAINTIFF GRANT &
14 BEVERLY BROWN; RICHARD                 EISENHOFER, P.A.'S
   HARPOOTLIAN, P.A.; BIENERT,            PURPORTED ATTORNEY'S
15 MILLER & KATZMAN, PLC; DOES 1          LIEN ON DEFENDANT
   THROUGH 10.,                           BEVERLY BROWN'S
16                                        RELATOR RECOVERY AND
                Defendant.                REQUEST FOR ORDER
17                                        RELEASING FUNDS;
                                          MEMORANDUM OF POINTS
18                                        AND AUTHORITIES;
                                          DECLARATION OF BEVERLY
19                                        A. BROWN; DECLARATION OF
                                          SAMUEL A. JOSEPHS**
20
21                                        DATE:        March 5, 2018
                                          TIME:        1:30 p.m.
22                                        Courtroom:   6A
23
24
25
26
27
28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 5, 2018, at 1:30 p.m. in courtroom 6A of the above-captioned Court located at 350 West 1st Street, Los Angeles, California 90012, Defendant Beverly Brown will, and hereby does, move to strike Plaintiff Grant & Eisenhofer, P.A.'s purported attorney's lien on her recovery from the settlement in *U.S. ex rel Brown v. Celgene Corp.*, Case No. CV 10-3165-GH (the "*Celgene* Matter"), and further requests that the Court order the release of funds currently held by the Clerk of the Court in the Celgene Matter.   This motion is made on the ground that Plaintiff cannot have a lien on Defendant's recovery because the contingency fee agreement between the parties, the asserted basis of Plaintiff's purported lien, was voidable under California law at Ms. Brown's election and has been voided by Ms. Brown.

This motion is brought within the instant case as it is a separate and independent action involving a fee dispute brought by a law firm against its former client.  *See Mojtahedi v. Vargas*, 228 Cal. App. 4th 974, 978-980 (2014). This Court can determine the existence and validity of Plaintiff's purported lien upon a noticed motion to strike.  *See In re Hijacking of Pan American World Airways, Inc. Aircraft at Karachi Intern. Airport*, 698 F. Supp. 479, 482 (S.D.N.Y. 1988); *Marez v. Bassett*, No. CV 06-0118 ABC (RCx), 2011 WL 13213631, at *1, *3 (C.D. Cal. Dec. 28, 2011); *Kenneally v. Bosa Cal. LLC*, No. 09-CV-2039 WQH JMA, 2011 WL 1045136, at *3 (S.D. Cal. Mar. 22, 2011).

//

//

//

//

//

//

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

This motion is based on this notice of motion, the attached memorandum of points and authorities, the Declarations of Beverly A. Brown and Samuel A. Josephs and attached Exhibits, all pleadings, files, and records in this action, and on any further argument and evidence as may be presented to the Court at or before the date of the hearing on this motion.

Dated:  January 16, 2018          Respectfully submitted,

SPERTUS, LANDES & UMHOFER, LLP


/s/_____
James W. Spertus
Samuel A. Josephs
Attorneys for Defendant Beverly Brown

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

2.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF RELEVANT FACTS.................................................... 3

III.  G&E HAS NO LIEN OVER MS. BROWN'S RECOVERY AS A
      MATTER OF LAW................................................................................ 5

      A.   The Validity of G&E's Purported Lien is Appropriately Adjudicated
           in This Action and Via This Motion to Strike. ..................................... 5

      B.   California Law Governs the G&E-Brown Agreement and G&E's
           Purported Lien Claim.......................................................................... 7

           1.   The CDCA has adopted Section 6147 through its Local Rules,
                which G&E agreed to follow when it voluntarily filed the
                Celgene complaint on behalf of Ms. Brown in the CDCA and
                applied to appear pro hac vice........................................................ 8

           2.   Under California's choice of law rules, California law applies... 10

      C.   The G&E-Brown Agreement is Voidable, Has Been Voided, and
           Thus Cannot Serve as a Vasis for a Lien. ........................................... 11

IV.   G&E IS BARRED FROM RECOVERING ANY FEES IN EXCESS
      OF ITS CLAIMED $7.7 MILLION LODESTAR. .................................. 14

V.    CONCLUSION...................................................................................... 17

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

i.

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Alderman v. Hamilton*,
 205 Cal. App. 3d 1033 (1988) ................................................. 11, 12, 13

*Arnall v. Superior Court*,
 190 Cal. App. 4th 360 (2010) ........................................................... 12

*Arno v. Club Med, Inc.*,
 22 F.3d 1464 (9th Cir. 1994) ........................................................... 10

*Carroll v. Interstate Brands Corp.*,
 99 Cal. App. 4th 1168 (2002) ...................................................... 7, 11

*Dranow v. Kane*,
 No. B156386, 2003 WL 21546061 (Cal. App. July 10, 2003) .......................... 7

*Englebrick v. Worthington Industries, Inc.*,
 No. SACV 08-01296-CJC(MLGx), 2016 WL 6818350
 (C.D. Cal. Aug. 12, 2016) ............................................................... 9

*Fergus v. Songer*,
 150 Cal. App. 4th 552 (2007) .......................................... 11, 12, 13, 15

*Fletcher v. Davis*,
 33 Cal. 4th 61 (2004) ..................................................................... 11

*Fracasse v. Brent*,
 6 Cal. 3d 784 (1972) .................................................................... 7, 14

*In re Bailey*,
 197 F.3d 997 (9th Cir. 1999) ........................................................... 13

*In re Hijacking of Pan American World Airways, Inc. Aircraft at Karachi
 Intern. Airport*, 698 F. Supp. 479 (S.D.N.Y. 1988) ................................ 7

*In re Wright*,
 290 B.R. 145 (C.D. Cal. 2003) ........................................................... 9

*K.C. ex rel. Erica C. v. Torlakson*,
 792 F.3d 963 (9th Cir. 2014) ............................................................. 6

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

Spertus, Landes & Umhofer, LLP
1990 S BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ........................................................................... 11

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
  313 U.S. 487 (1941).............................................................................. 10

*Marez v. Bassett*,
  No. CV 06-0118 ABC (RCx), 2011 WL 13213631
  (C.D. Cal. Dec. 28, 2011) ........................................................................ 6

*Mesa West, Inc. v. La Moure*,
  No. G038601, 2009 WL 388992 (Cal. Ct. App. Feb. 18, 2009) ........................ 15

*Mojtahedi v. Vargas*,
  228 Cal. App. 4th 974 (2014) .................................................................... 6

*Paul E. Iacono Structural Engineer, Inc. v. Humphrey*,
  722 F.2d 435 (9th Cir. 1983) ..................................................................... 8

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) .............................................................................. 15

*Ribbens Intern., S.A. de C.V. v. Transport Intern. Pool, Inc.*,
  47 F. Supp. 2d 1117 (C.D. Cal. 1999) ....................................................... 11

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ..................................................................... 8

*S. Cal. Gas Co. v. Flannery*,
  5 Cal. App. 5th 476 (2016) ...................................................................... 14

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) .................................................................... 10

*U.S. ex rel. Brown v. Celgene Corp.*,
  Case No. CV 10-3165-RGK-SS ........................................................... 1, 9, 17

*Weiss v. Marcus*,
  51 Cal. App. 3d 590 (1975) ..................................................................... 14

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

iii.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

## **STATUTES**

28 U.S.C. § 1332 ............................................................................... 6

Cal. Bus. & Prof. Code § 6000 .......................................................... 8, 9

Cal. Bus. & Prof. Code § 6068 .......................................................... 9, 14

Cal. Bus. & Prof. Code § 6148 .......................................................... 9

Cal. Bus. & Prof. Code § 6147 .......................................................... passim

Cal. Code Civ. Proc. § 425.16 ........................................................... 7

Cal. Code Civ. Proc. § 1646 ............................................................... 7, 10

Cal. Code Civ. Proc. § 1717(a) .......................................................... 11

iv.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

For her extraordinary efforts in obtaining $259 million for the United States government in the case captioned *U.S. ex rel. Brown v. Celgene Corp.*, Case No. CV 10-3165-RGK-SS (the "*Celgene* Matter"), Judge R. Gary Klausner awarded defendant Beverly Brown a well-deserved statutory relator-share of $72,595,499.20.  But none of that money has been paid to Ms. Brown.  Instead, the full amount sits in this Court's registry, where the United States deposited it based on a purported attorney fee lien asserted by plaintiff Grant & Eisenhofer ("G&E"), Ms. Brown's predecessor counsel in the *Celgene* Matter.  G&E, however, has no valid lien against Ms. Brown's recovery as a matter of law.  Ms. Brown therefore brings this motion to extinguish G&E's purported lien and at last obtain payment of her statutory relator-share award.

In March 2017, Ms. Brown negotiated a settlement of the *Celgene* Matter whereby Celgene agreed to pay $259,269,640 to the United States government.[1]  The settlement was consummated several months later following government approval.  Under the False Claims Act, Ms. Brown was statutorily entitled to receive 25% to 30% of this settlement.

Over the next few months, Ms. Brown and the government attempted to informally resolve the relator-share issue.  During the then-pending negotiations, G&E notified the government that it claimed an attorney's lien of over $41,000,000 on Ms. Brown's recovery.  G&E further demanded that the government disburse no funds to Ms. Brown until its lien was satisfied.  The United States then sought and obtained leave from Judge Klausner to deposit the entire relator-share amount in the Court's registry.

---

[1]   Celgene paid the rest of the $280 million to the state and municipal plaintiffs.

1.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

On December 15, 2017, Judge Klausner ruled that Ms. Brown is entitled to a twenty-eight percent (28%) relator-share of the Celgene settlement, a total of $72,595,499.20. Though G&E filed a motion to intervene in the *Celgene* Matter to litigate the validity of the alleged lien in that action, Judge Klausner declined to rule on the validity of G&E's purported lien, finding that the issue would be best adjudicated by this Court in the instant case. Accordingly, based solely on G&E's purported lien, Judge Klausner ordered that Ms. Brown's entire relator-share award remain in the Court's registry pending an adjudication by this Court.

The purpose of this motion is to challenge the validity of G&E's purported lien on Ms. Brown's recovery. As will be made plain below, the Court should find that G&E has no right to a lien and strike it. G&E's sole alleged basis for the lien – a flawed contingency fee agreement between it and Ms. Brown – was voidable because it failed to comply with California Business and Professions Code section 6147, and Ms. Brown in fact voided it. Accordingly, there is no contract between Ms. Brown and G&E, and thus no basis for a lien. G&E's claimed lien therefore should be stricken and the full amount on deposit in the Court registry immediately released to Ms. Brown.

Morevoer, even if G&E could assert a lien over a portion of Ms. Brown's recovery, the most to which G&E would be entitled under established California law is its claimed lodestar of $7,759,350.48 – roughly 18.76% of G&E's current claim of $41,359,350.48. This is because, with a void fee agreement, G&E's asserted lodestar represents the ceiling of its potential recovery from Ms. Brown. Thus, even if G&E had a lien, the most that appropriately could be retained in the Court registry on account of that lien while the parties litigate the merits of G&E's lodestar claim would be $7,759,350.48. Thus, at an absolute minimum, the balance of $64,836,148.72 should be immediately released to Ms. Brown.

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

2.

## II.   Statement of Relevant Facts

On October 26, 2009, Ms. Brown executed a written contingency fee agreement with G&E ("G&E-Brown Agreement") to represent her in a *qui tam* False Claims Act action against her then-employer Celgene.  Declaration of Beverly Brown ("Brown Decl.") ¶ 3.  This agreement neither contained a clause authorizing an attorney lien, nor any language stating that the fee was negotiable and not set by law as required by California Business and Professions Code section 6147.  Ms. Brown executed the G&E-Brown Agreement at her home in California after discussing her potential representation with then-G&E attorney Reuben Guttman.  Brown Decl. ¶ 3.

G&E filed the *Celgene* Matter in April 2010.  *See* Dkt. No. 1, Case No. CV 10-3165-RGK-SS.  As is typical in qui tam actions, the case remained under seal while the government investigated and determined whether to intervene.  The case was unsealed on March 21, 2014 after both the United States and the various state and municipal plaintiffs declined to intervene.  *See* Dkt. No. 99, Case No. CV 10-3165-RGK-SS.

In April 2015, Ms. Brown terminated G&E's representation after learning that G&E was terminating Reuben Guttman from the firm.  Ms. Brown then retained Mr. Guttman as her new counsel because she had developed a close working relationship with him, and trusted him as the lawyer best able to represent her interests.  Brown Decl. ¶ 5.   Ms. Brown also retained defendants Bienert, Miller & Katzman PLC and Richard A. Harpootlian, P.A. to represent her as co-counsel.  *See* Dkt. No. 181, Case No. CV 10-3165-RGK-SS.

Two years later, in March 2017, Ms. Brown negotiated a settlement with Celgene under which Celgene agreed to pay a total of $280 million to the United States and various state and municipal plaintiffs.  Brown Decl. ¶ 7.  The parties

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

1    later agreed that $259,269,640 of the $280 million would be paid to the United

2    States.

3         On June 21, 2017, Ms. Brown voided the G&E-Brown Agreement.  Brown

4    Decl. ¶ 12.   On September 14, 2017, while the Department of Justice and Ms.

5    Brown were negotiating Ms. Brown's relator-share of the *Celgene* Matter

6    settlement, G&E sent a letter to the Department of Justice asserting that it had a

7    purported lien of $41,359,350.48 on Ms. Brown's recovery, of which

8    $7,759,350.48 constituted actual fees and costs.  G&E demanded that no

9    disbursement be made to Ms. Brown until the lien was satisfied.  Brown Decl. ¶

10   13.  G&E's letter precipitated the collapse of settlement talks with the Department

11   of Justice, which had previously agreed to pay Ms. Brown her minimum statutory

12   25% relator share and to continue negotiating with Ms. Brown regarding her

13   entitlement to amounts above the 25% minimum.  *See* Declaration of Samuel

14   Josephs ("Josephs Decl.") ¶ 7; Exhibit B ¶¶ 20-32.  After receiving G&E's letter,

15   however, the Department of Justice refused to pay any amount to Ms. Brown

16   without G&E's permission or a Court order.  Josephs Decl. ¶ 7; Exhibit B ¶¶ 20-

17   32.  Ms. Brown was compelled to file a motion to have the court determine her

18   relator-share of the *Celgene* Matter settlement.  *See* Dkt. No. 504, Case No. CV

19   10-3165-RGK-SS.  The United States then sought and obtained leave to deposit

20   the entire relator share amount with the Court.  *See* Dkt. Nos. 507, 509, Case No.

21   CV 10-3165-RGK-SS.

22         On December 15, 2017, Judge Klausner ruled that Ms. Brown was entitled

23   to a 28% share of the *Celgene* Matter settlement due to her high personal

24   involvement and effort in prosecuting the case.  Josephs Decl. ¶ 2; Exhibit A.  Ms.

25   Brown's entitlement based on this percentage is $72,595,499.20.  Judge Klausner,

26   however, declined to adjudicate the validity of G&E's purported lien, finding that

27   the issue was not related to determining Ms. Brown's relator-share or to the

28

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

4.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

underlying disputes in the *Celgene* Matter.  Judge Klausner identified the instant case as the appropriate Court to decide the G&E lien claim, and stated that the Clerk of the Court would hold all of the relator's funds until this Court resolved the lien dispute.  Josephs Decl. ¶ 2; Exhibit A at 7 ("That amount [28% of the settlement with the government] will remain in the Court Registry pending adjudication of G&E's lien in either Case No. CV-17-05968 or Case No. 17-07122.").

Following Judge Klausner's Order, counsel for Ms. Brown proposed a stipulation to G&E, asking G&E to agree to release to Ms. Brown the undisputed portion of Ms. Brown's share of the settlement, $35,797,949.62, while the parties litigate the remaining $36,797,549.48, pursuant to G&E's claimed lien.  Josephs Decl. ¶ 3.  While Ms. Brown disagrees entirely with G&E claims regarding the amounts to which it purportedly is entitled, the proposed stipulation would have retained in the Court registry funds sufficient to cover G&E's claimed entitlement to 40% of Ms. Brown's relator share, or $29,038,199, plus an additional $7,759,350.48 in attorneys' fees and costs, for a total of $36,797,549.48.

During the parties' Rule 7-3 conference, however, G&E refused to enter into the stipulation, citing the lack of sufficient information about other money Ms. Brown may have received pursuant to her settlement with Celgene that is not the subject of Ms. Brown's 28% share of her settlement with the federal government, because G&E believes it may have a claim to more money.  Josephs Decl. ¶¶ 4-5.

## III.   G&E Has No Lien Over Ms. Brown's Recovery as a Matter of Law.

### A.   The Validity of G&E's Purported Lien is Appropriately Adjudicated in This Action and Via This Motion to Strike.

Under California law, the existence, validity, and amount of a predecessor attorney's purported lien over the proceeds of an underlying lawsuit is

5.

appropriately adjudicated through an independent action between the predecessor attorney and the client. *Mojtahedi v. Vargas*, 228 Cal. App. 4th 974, 978-79 (2014). This case is precisely such an action. Indeed, G&E expressly seeks in this case to establish the existence of its claimed entitlement to fees from the *Celgene* Matter, the purported validty of its fee agreement with Ms. Brown, and the amount of fees and costs to which it is entitled. *See, e.g.*, First Amended Complaint ¶¶ 57-60, 79-80. As this Court previously confirmed, it has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332. *See* Dkt. Nos. 18, 21. Thus, the existence and validty of G&E's claimed lien is squarely before this Court.

This is the same conclusion Judge Klausner reached in his relator-share order. While federal courts may exercise ancillary jurisdiction to consider disputes involving attorney's fees and liens arising from the cases pending before them, whether to exercise such jurisdiction is entirely within a court's discretion. *See K.C. ex rel. Erica C. v. Torlakson*, 792 F.3d 963, 968 (9th Cir. 2014). Judge Klausner desclined to exercise ancillary jurisdiction over the fee dispute between G&E and Ms. Brown, finding that the dispute should be adjudicated in the present action. *See* Josephs Decl. ¶ 2; Exhibit A at 7.

Moreover, this motion is the proper vehicle by which to challenge the existence and validty of G&E's claimed lien. Motions to adjudicate attorney's liens under California law are available in federal court pursuant to a noticed motion. *See, e.g.*, *Marez v. Bassett*, No. CV 06-0118 ABC (RCx), 2011 WL 13213631, at *1, *3 (C.D. Cal. Dec. 28, 2011). The "motion to strike" moniker appears to be the most common name given to motions adjudicating the existence and validity of attorneys' liens considered by federal district courts.[2] *See, e.g.*,

---

[2]     California state courts identify a motion brought by a client to nullify a purported lien asserted by her attorney using a number of different labels. The

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

*Marez*, 2011 WL 13213631, at *1; *In re Hijacking of Pan American World Airways, Inc. Aircraft at Karachi Intern. Airport*, 698 F. Supp. 479, 481 (S.D.N.Y. 1988).  Ms. Brown thus brings this motion as a motion to strike.[3]

**B.     California Law Governs the G&E-Brown Agreement and G&E's Purported Lien Claim.**

California law governs the G&E-Brown Agreement and whether G&E is entitled to its purported lien.  The United States District Court for the Central District of California ("CDCA") has expressly adopted, via its Local Rules, the California Business & Professions Code provisions regulating attorneys.  In addition, under California's choice of law rules, California Civil Code section 1646 embodies California's choice of law rule regarding contractual matters such as attorney-client fee agreements, and requires application of California law to the G&E-Brown Agreement.[4]

---

case law contains opinions considering "motions to expunge" attorney's liens, *see, e.g. Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1171 (2002), and "motions to quash" attorney's liens, *see e.g. Dranow v. Kane*, No. B156386, 2003 WL 21546061, at *1 (Cal. App. July 10, 2003).

[3]     If the Court finds that there is any substantive difference between a "motion to strike" an attorney's lien and motions to "expunge" or "quash" an attorney's lien, Ms. Brown hereby asks the Court to treat this motion under the appropriate title.

[4]     Indeed, this Court applied California law when it granted Ms. Brown's special motion to strike pursuant to California Code of Civil Procedure § 425.16, as well as when it dismissed Plaintiff's breach of contract claim against Ms. Brown under *Fracasse v. Brent*, 6 Cal. 3d 784 (1972).  Dkt. No. 59: December 6, 2017 Civil Minute Order.

7.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1.     *The CDCA has adopted Section 6147 through its Local Rules, which G&E agreed to follow when it voluntarily filed the* Celgene *complaint on behalf of Ms. Brown in the CDCA and applied to appear pro hac vice.*

Each federal district court is free to determine how to "regulate the conduct of lawyers appearing before them." *Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435, 439 (9th Cir. 1983). The CDCA, through Local Rule 83-3.1.2, has expressly adopted California's ethics rules. The Rule reads in its entirety:

> In order to maintain the effective administration of justice and the integrity of the Court, each attorney shall be familiar with and comply with standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto. These statutes, rules and decisions are hereby adopted as the standards of professional conduct, and any breach or violation thereof may be the basis for the imposition of discipline. The Model Rules of Professional Conduct of the American Bar Association may be considered as guidance.

C.D. Cal. L.R. 83-3.1.2. *See also Rodriguez v. Disner*, 688 F.3d 645, 656 (9th Cir. 2012) ("Under the [Central District of California's] local rules, California law governs a district court's determination whether an ethical violation has occurred"); ABA Model Rule 8.5(b) ("Choice of Law. In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows: (1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits"); Restatement (Third) of the Law Governing Lawyers §5 cmt. h ("If the lawyer's act occurs in the course of representing a client in a litigated matter, the presumptive preference is for the lawyer-code rules enforced by the tribunal in which the proceeding is pending").

The California State Bar Act's current codification is Business & Professions Code chapter 4, sections 6000-6243. *See* Cal. Bus. & Prof. Code

8.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

§ 6000 ("This chapter of the Business and Professions Code constitutes the chapter on attorneys. It may be cited as the State Bar Act"). Several courts within the CDCA have applied provisions of the Business & Professions Code, pursuant to Local Rule 83-3.1.2, to conduct of attorneys appearing there. *See In re Wright*, 290 B.R. 145, 150-151 (C.D. Cal. 2003) (applying Bus. & Prof. Code §§ 6068 and 6148 (the latter being the provision addressing the required formalities of an attorney-client fee agreement),[5] pursuant to Local Rule 83-3.1.2); *Englebrick v. Worthington Industries, Inc.*, No. SACV 08-01296-CJC(MLGx), 2016 WL 6818350, at *9 (C.D. Cal. Aug. 12, 2016) (applying Bus. & Prof. Code § 6068(e) pursuant to Local Rule 83-3.1.2).

Thus, Business & Professions Code section 6147, the provision regarding required disclosures in attorney-client contingency fee agreements and the provision central to this case, has been affirmatively adopted by this Court as a rule of professional conduct to which all attorneys appearing before it must adhere. Furthermore, G&E had notice of the applicability of the State Bar Act, and by extension Section 6147, when its attorneys originally filed the *Celgene* case or later noticed their appearance or appeared *pro hac vice*. *See* CDCA L.R. 83-2.1.3.3 ("Applicants for permission to appear pro hac vice must submit, in each case in which the applicant seeks to appear, the following: (a) a completed Application of Non-Resident Attorney to Appear in a Specific Case, which must include: (1) a certification that the applicant is familiar with the Court's Local Rules….").[6] Therefore, G&E had to comply with the State Bar Act in all aspects

---

[5] Unlike Section 6148(a), Section 6148(b) does not – on its face – exclude contingency arrangments from its ambit, and G&E has arguably violated the provision by refusing to provide Ms. Brown with its time entries.

[6] Lesley Weaver, a California attorney, was attorney of record for G&E at the outset of the case. *See U.S. ex rel. Brown v. Celgene*, Case No. 10-03165, Dkt. No. 1 at 70. Jay Eisenhofer, who signed the retainer, was admitted *pro hac vice*. *See U.S. ex rel. Brown v. Celgene*, Case No. 10-03165, Dkt. No. 177 (noting Mr.

9.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

of the *Celgene* case, and the State Bar Act, in particular Section 6147, governs this dispute.

> **2.** *Under California's choice of law rules, California law applies.*

In the event this Court finds that Section 6147 is not applicable by way of CDCA Local Rule 83-3.1.2, it should still nevertheless find that California law controls under California's choice-of-law rules.

A federal district court sitting in diversity is to apply substantive state law of the forum state, which includes a forum state's choice of law rules. *See, e.g.*, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016).  Accordingly, California's choice of law rules control this dispute.

California Civil Code section 1646 embodies California's choice of law rule regarding contractual matters such as attorney-client fee agreements, and it provides that an agreement is governed by "the law and usage of the place where it is made" when the contract does not indicate a place of performance.[7]  As noted by the Ninth Circuit, a contract is "made" where it is accepted.  *Arno v. Club Med, Inc.*, 22 F.3d 1464, 1468 n.6 (9th Cir. 1994).

Ms. Brown accepted the G&E fee agreement at her home in California, where she signed the agreement after receiving it already signed on behalf of G&E by Jay Eisenhofer.  Brown Decl. ¶ 3.  Thus, under California Civil Code section 1646, California law governs the G&E-Brown Fee Agreement.[8]

---

Eisenhofer's *pro hac vice* admission).    *See* Dkt. No. 177, Case No. CV 10-3165-RGK-SS (noting Mr. Eisenhofer's *pro hac vice* admission).

[7]    Though G&E represented a California resident who worked in California, on behalf of whom G&E brought claims in the Central District of California, the G&E-Brown Agreement does not specify where the "performance" of the representation was to occur.  Brown Decl. ¶ 3.

[8]    Although California Civil Code section 1646 is dispositive of this issue, California's "governmental interest" framework also establishes that California

10.

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

### C. The G&E-Brown Agreement is Voidable, Has Been Voided, and Thus Cannot Serve as a Vasis for a Lien.

Under California law, an attorney's lien arises solely from contractual agreement, either via express language in the agreement itself or via implication. *Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1172 (2002). Indeed, "[u]nlike a service lien or a mechanic's lien . . . an attorney's lien is not created by the mere fact that an attorney has performed services in a case." *Id.* An attorney fee lien, in other words, is exclusively a creature of contract. *Carroll*, 99 Cal. App. 4th at 1172.

---

law governs the G&E-Brown Fee Agreement. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006). California has an overriding interest in regulating an attorney's representation of California citizens, *see Fletcher v. Davis*, 33 Cal. 4th 61, 67 (2004) ("[T]here are no transactions respecting which courts . . . are more jealous and particular, than dealings between attorneys and their clients"), and the language used in California Business and Professions Code section 6147, the central provision at issue, is strong evidence of California's interest in "protect[ing] clients and [assuring] fee agreements are fair and understood by clients," *Alderman v. Hamilton*, 205 Cal. App. 3d 1033, 1037 (1988). Section 6147(b) expressly states that any contingency fee agreement's "[f]ailure to comply with any provision of [section 6147] renders the agreement voidable at the option of the plaintiff." Use of such "mandatory, unavoidable, and emphatic" language is strong evidence California has made a "basic and fundamental policy choice" that contingency fees which fail to comply with Section 6147 are unlawful and voidable. *Ribbens Intern., S.A. de C.V. v. Transport Intern. Pool, Inc.*, 47 F. Supp. 2d 1117, 1122 (C.D. Cal. 1999) (resolving a conflict of law dispute in favor of California by noting that the language of California Civil Code section 1717(a) rendering nonreciprocal fee agreements void was evidence of California's overriding interest). Thus, applying any other state's law which would allow a contingency fee agreement that violates section 6147 to be enforceable in a California court would defeat the "deterrent and protective purposes of section 6147." *Fergus v. Songer*, 150 Cal. App. 4th 552, 573 (2007). Therefore, because California has an overriding interest in protecting its citizens from abusive contingency fee agreements, its law reflecting this policy, section 6147, governs in this case.

The G&E-Brown Agreement does not have an express lien provision. Brown Decl. ¶ 3.  Therefore, G&E's only possible lien claim depends on the enforceability of the contingency provisions of the contract.  Because the G&E-Brown Agreement has been voided in its entirety, it consequently has no legal force or effect under California law.

California law imposes strict standards and requirements for attorney fee agreements, and in particular contingency fee agreements.  Among other requirements, a contingency fee agreement must include a "statement that the fee is not set by law but is negotiable between the attorney and client."  Cal. Bus. & Prof. Code § 6147(a)(4).  Failure to comply with that requirement "renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee."  *Id.* § 6147(b); *see also Arnall v. Superior Court*, 190 Cal. App. 4th 360, 369 (2010) (holding that contingency fee agreement was voidable by client under Section 6147 where "sole deficiency was the absence of the fee negotiability statement").  The purpose of Section 6147 is to "protect clients and to ensure fee agreements are fair and understood by clients." *Alderman*, 205 Cal. App. 3d at 1037.  Accordingly, fee agreements are to be strictly construed against the attorney.  *Id.*

On its face, the G&E-Brown Agreement does not comply with Section 6147 – it lacks the requisite statement that the contingency fee is "not set by law, but is negotiable between the attorney and client."  Ms. Brown accordingly had the statutory right to void it, and she in fact exercised that right and voided the agreement after months of attempting to get G&E to provide her with its billing records and to discuss its fee entitlement in good faith.  Brown Decl. ¶ 12. Furthermore, because Ms. Brown notified G&E she was voiding the agreement while the *Celgene* Matter was still pending, and before G&E had filed a lawsuit against her, her voiding of the agreement was timely.  *See Fergus*, 150 Cal. App.

12.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

4th at 559, 571 (finding client's voiding of an agreement violative of Section 6147 timely, and that the client did not ratify the agreement, after voiding it after the attorney had filed a lawsuit to collect his contingent fee); *Alderman*, 205 Cal. App. 3d at 1035-1036, 1038 (noting that clients successfully voided a contingency fee agreement by raising Section 6147 as an affirmative defense to an attorney's lawsuit for his contingent fee).

Once a fee agreement is voided, it no longer has any legal effect whatsoever. *See Fergus*, 150 Cal. App. 4th at 573 ("If the contingency fee agreement is void, there is no contingency fee arrangement."). At that point, the voided contract "is no contract at all; it binds no one and is a mere nullity." *Id.* "Consequently, such a contract cannot be enforced." *Id.* There is, in other words, no contract between G&E and Ms. Brown, and without a contract, there is no lien. *See In re Bailey*, 197 F.3d 997, 1002 (9th Cir. 1999) (holding that a void contingency fee agreement created no lien against the client's recovery).

The sole basis upon which Judge Klausner retained Ms. Brown's relator-share award in the Court's registry was G&E's purported lien. *See* Josephs Decl. ¶ 2; Exhibit A at 5-7. Indeed, without a lien, the only basis upon which G&E could prevent Ms. Brown from receiving her relator-share award would be a pre-judgment attachment or other provisional remedy – something to which G&E has not shown (and cannot show) any entitlement. Without a valid lien, in other words, G&E is no different from any other plaintiff who claims the defendant owes it money; it has the right to pursue its claims, but not to deprive the defendant of possession and use of her property and assets in the meantime. Accordingly, the Court should order the immediate release of all funds held in the Court's registry to Ms. Brown.

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

**IV.   G&E is Barred From Recovering Any Fees In Excess of Its Claimed $7.7 Million Lodestar.**

Even if the Court were to accept G&E's claim that it has a valid lien, G&E would not be entitled to tie up the tens of million dollars it claims.  Rather, as a matter of law, G&E's potential recovery in this case is capped at its actual fees and costs incurred, *i.e.*, its claimed lodestar amount of $7.759 million.  This represents the absolute maximum that could conceivably be retained in the Court registry based on G&E's purported lien.

Although an attorney's lien based on a valid and operative contingency fee agreement can survive the attorney's discharge from a case, the "attorney's recovery is limited to the reasonable value of services actually performed (i.e. its *quantum meruit*), rather than the full percentage specified in the contract." *S. Cal. Gas Co. v. Flannery*, 5 Cal. App. 5th 476, 494 (2016) (citing *Fracasse v. Brent*, 6 Cal. 3d 784, 786 (1972)); *Weiss v. Marcus*, 51 Cal. App. 3d 590, 598 (1975) ("[W]here an attorney has been discharged (with or without cause) by a client with whom the attorney had a contingent fee agreement, upon occurrence of the contingency specified in the agreement, the attorney is limited to a [q]uantum meruit recovery for the reasonable value of his services rendered to the time of discharge.").  In other words, under *Fracasse*, an attorney is entitled to only *quantum meruit* upon termination from a representation.  *Fracasse*, 6 Cal. 3d at 786.

This Court, citing to *Fracasse*, has already found that G&E is not entitled to recover on a breach of contract theory, but rather may pursue only its claim for *quantum meruit* recovery against Ms. Brown.  *See* Dkt. No. 59: December 6, 2017 Civil Minute Order, at 13-14 ("[U]nder *Fracasse*, breach of contract is not a viable remedy for G&E to pursue.  It is limited only to a quantum meruit recovery.").  Thus, in the event this Court were to find G&E has a valid lien on

14.

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Ms. Brown's recovery, the amount of the lien cannot exceed G&E's *quantum meruit*.

Furthermore, and critically, where a predecessor law firm's fee agreement has been voided by the client for failure to comply with Section 6147, the law firm's *quantum meruit* recovery is limited to its lodestar, *i.e.*, its hours worked multiplied by its hourly rate.  Specifically, where "a client exercises his right to void a contingency fee agreement, section 6147 does not permit the trier of fact to consider the contingent nature of the fee arrangement in determining a reasonable fee."  *Fergus*, 150 Cal. App. 4th at 573  This is because "[i]f the contingency fee agreement is void, there is no contingency fee arrangement."  *Id.*  Moreover, "[t]he deterrent and protective purposes of section 6147 would be impaired if an attorney who was barred from enforcing a contingency fee agreement would nevertheless be entitled to a percentage of the recovery based on the contingent risk factor."  *Id.*  Put differently, a law firm with a voided contingency fee agreement cannot still get the benefit of that agreement by way of an enhancement to lodestar.  Instead, the firm is limited to, at most, recoving its actual lodestar amount.

Notably, this rule is consistent with both federal and California law even outside the context of a voided fee agreement, as cases repeatedly have held that a predecessor counsel's lodestar is the best barometer of its reasonable fee in *quantum meruit*.  *See, e.g., Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (holding that "the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable' attorney's fee"); *Mesa West, Inc. v. La Moure*, No. G038601, 2009 WL 388992, at *14 (Cal. Ct. App. Feb. 18, 2009) (upholding the trial court's use of the attorney's lodestar only to calculate the reasonable fee in a *quantum meruit* action because in such an action an attorney is "entitled to recovery only a reasonable fee, not a discounted contingency fee" and "it cannot

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

15.

1   be said that paying [the attorney] his going legal rate for the hours he invoiced

2   was reversible error").

3          G&E ignores these well-settled principles in claiming entitlement to tens of

4   millions of dollars by virtue of its lien.  Indeed, G&E in essence claims that

5   despite both a voided fee agreement and having exited the case years before it was

6   settled, it nevertheless remains entitled to a contingency fee.  Morever, G&E's

7   refusal to release to Ms. Brown even the undisputed portion above and beyond its

8   lien demonstrates G&E's bad faith in asserting its lien in the first place.  By way

9   of a proposed stipulation, Ms. Brown requested G&E to agree to release to her

10  $35,797,949.62, a generous offer that would preserve G&E's claim to 40% of Ms.

11  Brown's share of the settlement, despite the fact that G&E is entitled only to its

12  lodestar under the case law.[9]   In response, G&E has taken the position that funds

13  that Ms. Brown or her counsel have received outside the 28% relator-share

14  awarded by Judge Klausner are somehow included as part of G&E's lien.  In other

15  words, G&E refuses to release Ms. Brown's undisputed portion of the 28%

16  relator-share on the basis that it may have a claim to other money that is not the

17  subject of Ms. Brown's statutory share, and is thus not being held by the Court.

18         G&E's asserted lodestar – and thus maximum recovery in this action – is

19  $7,759,350.48.[10]  This is the absolute most that could properly be retained in the

20  Court registry by virtue of G&E's claimed lien.  Thus, even if the Court declines

21  to adjudicate the validty of G&E's lien by way of this motion, it should

_____

[9]     By the numbers, the proposed stipulation allowed G&E to preserve its claim
to 40% of Ms. Brown's share, or $29,038,199, plus an additional $7,759,350.48 in
attorneys' fees and costs, for a total of $36,797,549.48.

[10]    Ms. Brown disputes G&E's asserted lodestar, but cannot properly assess
G&E's bills without detailed time entries, which she has been seeking from G&E
since March 2017.  Thus, at this time, she is unable to assess how close to $7.7
million a fair payment to G&E for its services in *quantum meruit* would come.

16.

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1  nevertheless release to Ms. Brown all amounts held in the Court registry beyond

2  G&E's claimed lodestar of $7,759,350.48.

3  **V.    Conclusion.**

4        Based on the foregoing, Ms. Brown respectfully requests that the Court

5  strike G&E's purported attorney's lien on her relator's share recovery in *U.S. ex*

6  *rel. Brown v. Celgene Corp.*, Case No. CV 10-3165-RGK-SS, and order the

7  immediate release of the entire award.  In the alternative, Ms. Brown respectfully

8  requests the Court to find that G&E's lien cannot exceed its claimed lodestar of

9  $7,759,350.48, and order that $64,836,148.72 be released forthwith to Ms. Brown.

10 Dated:  January 16, 2018          Respectfully submitted,

11

12                                  /s/_____

13                                  James W. Spertus
                                    Samuel A. Josephs
14                                  Attorneys for Defendant Beverly Brown

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

## DECLARATION OF BEVERLY A. BROWN

I, Beverly A. Brown, declare as follows:

1.       I provide this Declaration in support of Defendant Beverly Brown's Motion to Strike Plaintiff Grant & Eisenhofer, P.A.'s ("G&E") Purported Attorney's Lien on Defendant Beverly Brown's Relator Recovery and Request for Order Releasing Funds.  I have personal knowledge of the maters stated in this Declaration and, if called upon to do so, I could and would competently testify thereto.

2.       In 2009, I met in California with Reuben Guttman, who I understood was then a senior lawyer with Grant & Eisenhofer P.A. ("G&E").[11]  I was very impressed with Mr. Guttman's demeanor and reputation, and after extensive discussions I decided to pursue a case against my then-employer, Celgene Corporation ("Celgene"), on behalf of the government due to practices at Celgene I believed to be improper or unlawful.  I believed that Mr. Guttman was the best lawyer to pursue the case on my behalf.

3.       In order to retain Mr. Guttman, I signed an agreement with his then law firm G&E at my home in California.  I understand that a true and correct copy of that agreement, which is dated October 19, 2009, was submitted to the Court under seal in this case in connection with Defendants Bienert Miller & Katzman, PLC's and Richard Harpootlian P.A.'s Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6), as attached to the Declaration of Michael R. Williams at Dkt. No. 32-2.  I had never heard from or met Stuart Grant or Jay Eisenhofer, the "Managing Directors" of G&E, even though Jay Eisenhofer

---

[11]     At all times discussed in this Declaration, including from the time I started my employment with Celgene Corporation in 2001 until today, I have resided in Southern California.

DECLARATION OF BEVERLY A. BROWN

was the person who signed the agreement sent to me to sign in California. I never signed any other fee agreement with G&E.

4.    I never traveled to any of G&E's offices nor otherwise left California to meet with G&E's attorneys or staff.

5.    At the end of April 2015, I learned that G&E was terminating Reuben Guttman and he therefeore would be leaving G&E in short order. I knew immediately that I was going to follow Reuben to wherever he went after leaving G&E. I had initially hired Reuben as my lawyer, and had developed a close relationship with him, and his colleague Traci Buschner, over the course of the case. Other than Reuben and Traci, I met very few G&E attorneys other than Reuben and Traci. Most of my interaction was with Reuben and Traci. I understood that Mr. Sabella was a senior lawyer at G&E, and that he had been assigned by the firm's management to oversee my case. Mr. Sabella, however, had met with me only one time, here in California, and I rarely spoke with him on the phone. I did not have a good feeling about him. The few times I interacted with him, he treated me like I was wasting his time and causing him unnecessary work. I got the feeling he did not think much of the case, or me, which caused me great distress.

6.    In late April 2015, I signed a letter terminating G&E, addressed to Mr. Eisenhofer. A true and correct copy of that letter is attached to this Declaration as **Exhibit A.** Even after sending this letter, I expected that G&E attorneys who had worked under Mr. Guttman would have institutional knowledge that should help my case, so I authorized Reuben to determine if G&E would partner with Reuben to prosecute my case. An outreach occurred through Nancy Gertner, a retired federal judge, and Richard Harpootlian, who both participated in a call with Mr. Eisenhofer. I understand that G&E refused to continue working on my case with Mr. Guttman.

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

7.      On March 22, 2017, we reached an agreement with Celgene whereby Celgene agreed to pay $259,269,640 to the United States.

8.      I understand that in June 2015, shortly after Reuben left the firm, G&E filed a "Notice of Attorney's Charging Lien" in the case.  A copy of that document is attached to this Declaration as **Exhibit B.**

9.      On March 7, 2017, when it appeared the case might settle, one of my lawyers (Michael Williams) sent a letter to G&E asking it to send, among other information, the amount of the claimed lien and "the detailed time and cost records supporting the claimed lien amount."  A true and correct copy of this letter is attached to this Declaration as **Exhibit C.**

10.      Despite this request more than ten months ago, G&E has never provided me with any detailed time and cost records supporting the fees it claims I owe G&E.  Specifically, while I understand that G&E claims it incurred more than $7.75 million in fees and costs on my case, it has refused to provide any of the billing entries to support that claim.  The only thing G&E did provide to my lawyers was a 3-page document titled "Recapitulation" that showed a claimed fee and cost total of $7,759,350.48, but with no time entries or back-up documentation to support that claim.  A true and correct copy of the document G&E sent to my lawyers is attached as **Exhibit D**  Although this document is dated April 21, 2015, I never received it or anything like it at that time.  The first time I ever saw this document was earlier this year when G&E sent it to my lawyers.

11.      To this day, G&E has refused to provide me with any of its time entries or back-up documentation for its claimed fees and costs.

12.      On June 21, 2017, my attorney Michael Williams sent a letter to the lawyers representing G&E in connection with their claimed lien.  In that letter, with my authorization, Mr. Williams informed G&E that I had voided the October

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1    19, 2009 G&E fee agreement.  Once I learned that the contingency portion of

2    G&E's fee agreement did not comply with California law, and that I had the right

3    to void it, I exercised my right to do so.  A true and correct copy of Mr.

4    Williams's June 21, 2017 letter is attached to this Declaration as **Exhibit E.**

5        13.    On September 14, 2017, G&E's lawyers sent a letter to, among

6    others, the United States Department of Justice.  I was very upset to see that, while

7    G&E claimed it has a lien based on its October 19, 2009 fee agreement with me, it

8    failed to tell the Department of Justice that the agreement violated California law

9    and that I had voided it.  I was also very upset to see that G&E also told the

10   Department of Justice that it is entitled to recover $41,359,350.48 in fees from me,

11   and asked the government to withhold that money from me.

12       I declare under penalty of perjury under the laws of the State of California

13   and the United States that the foregoing facts are true and correct.

14   Executed this 14 day of January, 2018, at Los Angeles, California.

15

16   Dated:  January 14, 2018

17                                                    Beverly A. Brown

18

19

20

21

22

23

24

25

26

27

28

Spertius, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

DECLARATION OF BEVERLY A. BROWN

# EXHIBIT A

EXHIBIT A

April 21, 2015

VIA EMAIL ATTACHMENT
Jay Eisenhofer, Esq.
Grant & Eisenhofer P.A.
485 Lexington Avenue
29th Floor
New York, NY 10017

Re:  *U.S. ex rel. Brown v. Celgene Corporation, Case No. 10-cv-03165*

Dear Mr. Eisenhofer:

It is my understanding that Reuben Guttman is leaving your firm.  This letter terminates my relationship with Grant & Eisenhofer, P.A.   As I have retained Mr. Guttman to handle my case from this point forward, please furnish him with my file at your earliest convenience.

Since this matter is in litigation I would ask that you exercise extreme care and caution in this transition to ensure that my interests are not harmed or compromised in any way. Please contact Mr. Guttman if you have any questions about this request.

Sincerely,

Beverly Brown

cc:  Reuben A. Guttman, Esq.

# EXHIBIT B

EXHIBIT B

**GRANT & EISENHOFER P.A.**
Mary S. Thomas (Bar No. 175110)
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Fax: (302) 622 7100
mthomas@gelaw.com
*Attorneys for Grant & Eisenhofer P.A.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, the States of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WASHINGTON, WISCONSIN, the DISTRICT OF COLUMBIA, and the CITY OF CHICAGO, <br>      Plaintiffs, <br>      *Ex rel.* <br> BEVERLY BROWN, <br>      Plaintiff-Relator, <br><br> v. <br><br> CELGENE CORPORATION, <br>      Defendant. | Case No. 10-cv-03165-GHK-SS <br><br> **PLAINTIFF-RELATOR'S FORMER COUNSEL'S NOTICE OF ATTORNEY'S CHARGING LIEN** |

## NOTICE OF ATTORNEY'S CHARGING LIEN

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Grant & Eisenhofer P.A., former counsel to Plaintiff-Relator Beverly Brown, has an attorney's charging lien on any recovery in this action for the payment of attorneys' fees and the reimbursement of costs and disbursements.  The terms of the lien are set forth in Plaintiff-Relator's retention agreement with Grant & Eisenhofer P.A. dated October 19, 2009, which Grant & Eisenhofer P.A. will provide to the Court at the appropriate stage of this matter or at such time as the Court shall direct.

Dated:   June 3, 2015

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

By ___/s/ Mary S. Thomas_____
Mary S. Thomas (Bar No. 175110)
123 Justison Street
Wilmington, DE  19801
Telephone: (302) 622-7000
Fax: (302) 622 7100
mthomas@gelaw.com

*Attorneys for Grant & Eisenhofer P.A.*

# EXHIBIT C

EXHIBIT C

# BIENERT, MILLER & KATZMAN, PLC
## ATTORNEYS AT LAW
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700  •   Facsimile  (949) 369-3701

March 7, 2017

**VIA E-MAIL & OVERNIGHT MAIL**

Mary S. Thomas
GRANT & EISENHOFER P.A.
123 Justison Street, 7th Floor
Wilmington, DE 19801
Email: mthomas@gelaw.com

> **Re:**   ***United States of America, ex rel. Beverly Brown v. Celgene Corporation***
> ***Case No. 2:10-cv-03165-RGK-SS***

Dear Ms. Thomas,

This firm represents the plaintiff-relator Beverly Brown in the above-referenced lawsuit (the "Celgene Action").  I write regarding the purported lien Grant & Eisenhofer ("G&E") has filed in the Celgene Action.  Without admitting the validity of the purported lien and while reserving all of our and our client's rights, we request that G&E provide us with the amount of the claimed lien, the fee agreement or other document that G&E claims entitles it to assert a lien, and the detailed time and cost records supporting the claimed lien amount.

In addition, for each attorney or paralegal who billed time to the case, please indicate: (1) whether he or she is still employed by G&E, and (2) if not, his or her current place of employment.  For each vendor retained to work on the case, please provide back-up as to that vendor's qualifications and written scope of work.

We appreciate a prompt response.

Regards,

BIENERT, MILLER & KATZMAN, PLC

Michael R. Williams

# EXHIBIT D

EXHIBIT D



Grant & Eisenhofer P.A.

485 Lexington Avenue   New York, NY 10017   Tel: 646-722-8500   Fax: 646-722-8501

123 Justison Street
Wilmington, DE 19801
Tel: 302-622-7000
Fax: 302-622-7100

1747 Pennsylvania Avenue, N.W., Suite 875
Washington, DC 20006
Tel: 202-386-9500
Fax: 202-386-9505

30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Tel: 312-214-0000
Fax: 312-214-0001

04/21/15
Account No. 15690

Beverly Brown
2847 Panorama Court

**Celgene**

## RECAPITULATION

| Timekeeper | Total Hours to Date | Rate | Total to Date |
|---|---|---|---|
| Adam Block | 136.00 | 375.00 | $51,000.00 |
| Adrienne Bauer | 94.00 | 200.00 | $18,800.00 |
| Alessandra Phillips | 2.00 | 325.00 | $650.00 |
| Alexandra Dolce | 136.00 | 325.00 | $44,200.00 |
| Amy Owens | 14.90 | 325.00 | $4,842.50 |
| Beatrice Smith | 11.70 | 200.00 | $2,340.00 |
| Brenda Szydlo | 567.60 | 680.00 | $385,968.00 |
| C. Kirby Happer | 240.00 | 280.00 | $67,200.00 |
| Caroline Poplin | 373.30 | 850.00 | $317,305.00 |
| Carolynn A. Nevers | 1.30 | 250.00 | $325.00 |
| Cathy Aldinger | 18.50 | 210.00 | $3,885.00 |
| Daniel L. Berger | 3.00 | 975.00 | $2,925.00 |
| David Fischer | 1,488.00 | 660.00 | $982,080.00 |
| Edward Lilly | 1,025.10 | 440.00 | $451,044.00 |
| Elizabeth Shofner | 156.70 | 650.00 | $101,855.00 |
| Ethan Weber | 77.60 | 250.00 | $19,400.00 |
| Geoffrey C. Jarvis | 10.10 | 895.00 | $9,039.50 |
| Greg Goodman | 138.00 | 325.00 | $44,850.00 |
| Jacob Kirkham | 94.90 | 360.00 | $34,164.00 |
| James J. Sabella | 284.10 | 975.00 | $276,997.50 |

Beverly Brown
2847 Panorama Court

Account No. 15690
Page 2

04/21/15

Celgene

| Timekeeper | Total Hours to Date | Rate | Total to Date |
|---|---|---|---|
| James R. Banko | 18.00 | 595.00 | $10,710.00 |
| James Sugarman | 399.90 | 375.00 | $149,962.50 |
| Jennifer Williams | 27.10 | 400.00 | $10,840.00 |
| John C. Kairis | 55.00 | 775.00 | $42,625.00 |
| Joseph Nearey | 180.30 | 420.00 | $75,726.00 |
| Justin Victor | 1.80 | 410.00 | $738.00 |
| Kaywana Adams | 3.50 | 200.00 | $700.00 |
| Kimberly B. Schwarz | 3,091.50 | 350.00 | $1,082,025.00 |
| Kyle McGee | 29.50 | 495.00 | $14,602.50 |
| Laura Chirico | 0.30 | 140.00 | $42.00 |
| Lawrence Kempner | 292.80 | 440.00 | $128,832.00 |
| Lesley Weaver | 343.80 | 620.00 | $213,156.00 |
| Lydia Ferrarese | 118.30 | 450.00 | $53,235.00 |
| Marc Grobler | 5.00 | 250.00 | $1,250.00 |
| Maria Morinigo | 796.60 | 420.00 | $334,572.00 |
| Matthew Hartman | 2.90 | 225.00 | $652.50 |
| Michael A. Morris | 383.00 | 440.00 | $168,520.00 |
| Michael Gallagher | 225.00 | 410.00 | $92,250.00 |
| Ned Weinberger | 835.90 | 450.00 | $376,155.00 |
| Oderah Nwaeze | 16.00 | 360.00 | $5,760.00 |
| Philip Schiffrin | 64.30 | 120.00 | $7,716.00 |
| Rebecca Musarra | 429.50 | 495.00 | $212,602.50 |
| Reena Liebling | 4.80 | 325.00 | $1,560.00 |
| Reuben Guttman | 548.70 | 850.00 | $466,395.00 |
| Robyn Finnimore-Pierce | 15.80 | 210.00 | $3,318.00 |
| Ronald E. Wittman | 18.90 | 225.00 | $4,252.50 |
| Sara Haggerty | 0.20 | 190.00 | $38.00 |
| Scott Stanley | 134.50 | 325.00 | $43,712.50 |
| Shehzad Roopani | 2.20 | 325.00 | $715.00 |
| Talyana Bromberg | 322.50 | 460.00 | $148,350.00 |
| Traci Buschner | 886.30 | 660.00 | $584,958.00 |
| Trineka Schuster | 0.70 | 210.00 | $147.00 |

Beverly Brown
2847 Panorama Court

Account No. 15690
Page 3

04/27/15

Celgene

| Timekeeper | Total Hours to Date | Rate | Total to Date |
|---|---|---|---|
| Valisity Beal | 1,144.20 | 210.00 | $240,282.00 |
| | 15,271.60 | | $7,295,270.50 |

## Disbursements

| | |
|---|---|
| Expert | $185,594.87 |
| Filing Fee | $3,292.77 |
| Fax | $248.25 |
| Meeting Expense | $806.69 |
| Outside Counsel | $29,766.43 |
| Travel | $36,080.79 |
| Case-Related Publication | $105.08 |
| Duplication Services | $92,094.91 |
| Postage & Delivery | $5,202.86 |
| Service Fees | $389.10 |
| Telephone | $1,925.16 |
| Transcription Services | $1,953.07 |
| Case-Related Research | $12,351.18 |
| Outside IT Services | $1,910.61 |
| E-Discovery Data Processing Services | $30,748.65 |
| E-Discovery Data Hosting Services | $61,558.80 |
| Postage and Delivery | $50.76 |
| | $464,079.98 |

| **TOTAL** | **$7,759,350.48** |

# EXHIBIT E

EXHIBIT E

# BIENERT, MILLER & KATZMAN, PLC

## ATTORNEYS AT LAW

903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700  •  Facsimile  (949) 369-3701

June 21, 2017

**<u>VIA E-MAIL</u>**

Jill Basinger, Esq.
Rory S. Miller, Esq.
Glaser Weil Fink Howard Avchen & Shapiro LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
jbasinger@glaserweil.com
rmiller@glaserweil.com

      Re:    *United States ex rel. Brown v. Celgene*, 2:10-cv-03165-RGK-SS (C.D. Cal.)
              Claim for fees and costs by Grant & Eisenhofer

Dear Jill and Rory,

I am writing to follow up on our June 15, 2017 telephone conference.  As discussed at that time and in our earlier email setting the conference, we initiated that call for the purpose of meeting and conferring pursuant to L.R. 7-3 in advance of a potential motion relating to the claim for fees and costs and purported lien asserted by your client, Grant & Eisenhofer ("G&E"). While we continue to hope the parties can reach a resolution of those issues without the need for motion practice, we want to ensure that you and your client have a clear understanding of the issues we intend to raise in a motion, should one prove necessary to bring this matter to a prompt conclusion.

As you know, my client, Beverly Brown, initially hired Reuben Guttman to represent her in the above-referenced action (the "Celgene Action") while Mr. Guttman was employed by G&E.  Specifically, after Mr. Guttman was introduced to Ms. Brown by another lawyer and traveled to California to meet with her, Ms. Brown elected to retain Mr. Guttman to advise and represent her with respect to a potential false claims act case against her then employer, Celgene Corporation ("Celgene").  According to G&E's lien filed with the court in the Celgene Action, Ms. Brown executed a fee agreement with G&E dated October 19, 2009 (the "G&E Fee Agreement").  A copy of the G&E Fee Agreement, executed by Jay W. Eisenhofer on behalf of G&E, is enclosed.

In May of 2015, without consulting or providing advance notice to Ms. Brown, G&E fired Mr. Guttman.  Shortly thereafter, Richard A. Harpootlian and Hon. Nancy Gertner (ret.) requested on Ms. Brown's behalf that G&E remain as counsel of record in the case together with Mr. Guttman.  Ms. Brown wished to have G&E remain as counsel to, among other things, ensure

that there would be adequate resources to bring her case to a successful resolution.  G&E refused to remain on as Ms. Brown's counsel.  G&E's only stated reason for this refusal was that it was unwilling to work with Mr. Guttman as co-counsel.  Mr. Guttman, through his new firm and with this firm and Mr. Harpootlian's firm as co-counsel, thereafter have litigated the case through fact discovery, expert discovery, summary judgment, and to the eve of trial.

On June 3, 2015, shortly after it fired Mr. Guttman, G&E filed notice of an attorney's charging lien in this action.  That filing claims G&E has a charging lien "on any recovery in this action for the payment of attorneys' fees and the reimbursement of costs and disbursements."  Dkt. No. 190 at 2.  It also states "[t]he terms of the lien are set forth in Plaintiff-Relator's retention agreement with Grant & Eisenhofer P.A. dated October 19, 2009[.]"  *Id.*

### G&E does not have a valid or enforceable lien

Under California law, an attorney can create a valid fee lien with a client in one of two ways.  First, the attorney can include an express lien provision in the fee agreement with the client.  *Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1172 (2002).  The G&E Fee Agreement includes no such provision.  Second, a valid contingency fee agreement creates an implied fee lien.  *Id.*  Presumably, it is this type of implied lien that G&E contends is the basis for its purported lien filed in the Celgene Action.  G&E, however, has no valid implied lien because it does not have a valid or enforceable contingency fee agreement with Ms. Brown.  Indeed, it has no fee agreement with Ms. Brown at all.

As I'm sure you know, California law imposes strict standards and requirements for attorney fee agreements, and in particular contingency fee agreements.  Among other things, a contingency fee agreement must include "a statement that the fee is not set by law but is negotiable between the attorney and client."  Cal. Bus. & Prof. Code § 6147(a)(4).  Failure to comply with this or any of the other statutory requirements "renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee."  *Id*. § 6147(b).  Once a fee agreement is voided under Section 6147, it no longer has any legal effect whatsoever.  *Fergus v. Songer*, 150 Cal. App. 4th 552, 573 (2007) ("[a] void contract is no contract at all; it binds no one and is a mere nullity").

The G&E Fee Agreement signed by Mr. Eisenhofer does not comply with Section 6147.  Most notably, it lacks the expressly required statement that "the fee is not set by law but is negotiable between the attorney and client."  Courts have repeatedly voided purported contingency fee agreements specifically for failure to include this statement.  *See, e.g.*, *Arnall v. Superior Court*, 190 Cal. App. 4th 360, 369 (2010); *Alderman v. Hamilton*, 205 Cal. App. 3d 1033, 1038 (1988).  Because the G&E Fee Agreement does not comply with the statutory requirements, Ms. Brown has the right to void it.

Please be advised that Ms. Brown hereby exercises her right to void the G&E Fee Agreement for failure to comply with Section 6147.

Because G&E lacks a valid contingency fee agreement, it also lacks a valid lien.  Again, California law only provides for an implied lien for contingency fee agreements.  The G&E Fee Agreement, while purporting to be a contingency agreement, is now void.  It accordingly "is no contract at all; it binds no one and is a mere nullity."  *Fergus*, 150 Cal. App. 4th at 573.  G&E thus has no valid lien, and our motion to the court accordingly will request that the court extinguish the purported lien filed by G&E on June 3, 2015.

### **Whether or not it has a valid lien, G&E is not entitled to recover any fees or costs relating to the Celgene Action**

Separate and apart from its lack of a valid lien, G&E is not entitled to recover any fees in connection with the Celgene Action.

It is well established that the sole potential measure of compensation for a predecessor law firm in a contingency action is quantum meruit, *i.e.*, the reasonable value of the services provided.  *Fracasse v. Brent*, 6 Cal. 3d 784, 791 (1972).  A predecessor lawyer is never entitled to a percentage of the client's recovery.  Moreover, where a lawyer's fee agreement fails to comply with Section 6147, the lawyer's quantum meruit recovery is further limited to its reasonable lodestar (*i.e.*, reasonable hours billed multiplied by reasonable hourly rate), without any enhancement or increase based on the purported contingency risk.  This is because "[t]he deterrent and protective purposes of section 6147 would be impaired if any attorney who was barred from enforcing a contingency fee agreement would nevertheless be entitled to a percentage of the recovery based on the contingent risk factor.*"  *Fergus,* 150 Cal. App. 4th at 573.

Thus, under the best of circumstances, G&E's best case scenario would be to recover its straight-line lodestar, the amount and reasonableness of which it would have the burden to prove by a preponderance of the evidence.  This would involve, among other things, strict scrutiny of G&E's billing records.  But under the facts here, G&E is not entitled to any fees.

First, the statute of limitations on a claim for quantum meruit is two years.  *Leighton v. Forster*, 8 Cal. App. 5th 467, 490 (2017).  "Where the claim of quantum meruit is based upon services performed under a contract that was void or voidable, the limitations period commences to run on either the date the last payment was made toward the attorney fees, or the last date that the attorney performed services on the case."  *Id.*  Here, the statute of limitations on G&E's quantum meruit claim began to run, at the latest, on May 15, 2015, when the court granted G&E's motion to withdraw from the Celgene Action.  *See* Dkt. Nos. 177, 187.  More than two years have passed since that date, and the limitations period on any potential quantum meruit claim by G&E has therefore expired.

Second, even if its quantum meruit claim was not time-barred, that claim would have no value.  Where an attorney working under a purported contingency arrangement withdraws from the representation without proper justification, the attorney is not entitled to *any* fee.  *See Duchrow v. Forrest*, 215 Cal. App. 4th 1359, 1382–83 (2013), *Rus, Miliband & Smith v. Conkle*

*& Olesten*, 113 Cal. App. 4th 656, 671–76 (2003).  Here, the facts show that G&E terminated Reuben Guttman without consulting with Ms. Brown, knowing that she had initially hired Mr. Guttman and viewed him as her principal lawyer, and thus would wish to have him continue as her counsel.  By firing Mr. Guttman, in other words, G&E knew it was also effectively firing Ms. Brown as a client.  Moreover, when Ms. Brown asked G&E to remain as her counsel, it refused to do so because it purportedly did not want to work with Mr. Guttman.  G&E's conduct was the equivalent of a withdrawal from representing Ms. Brown.

Moreover, it was not a justified withdrawal.  The California Rules of Professional Conduct treat the purported inability to work with co-counsel as a permissive, not mandatory, ground to withdraw.  *See* Cal. Rule Prof. Conduct 3-700(C)(3).  Permissive withdrawals are treated with heightened scrutiny, and the withdrawing attorney must prove that its actions were so justified that it was entitled to abandon its client and shift to the client and successor counsel the burdens associated with bringing the case to a successful conclusion.  *Rus, Miliband & Smith*, 113 Cal. App. 4th at 675-76.  G&E's purported desire not to work with Mr. Guttman – an attorney who had successfully practiced at G&E for many years and is a nationally-recognized expert in false claims act cases – does not begin to meet that standard.

For these reasons, in our motion we intend to ask the court to rule that (1) G&E has no valid or enforceable fee lien in the Celgene Action and therefore the purported lien G&E filed on June 3, 2015 must be extinguished, and (2) whether or not it has a valid lien, G&E is not entitled to recover any fees in connection with the Celgene Action.  Please let me know if you would like to discuss any of these matters further before we file our motion.

Sincerely,

BIENERT, MILLER & KATZMAN, PLC

Michael R. Williams

Enclosure

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

# DECLARATION OF SAMUEL A. JOSEPHS

I, Samuel A. Josephs, declare as follows:

1.      I am a partner at Spertus, Landes & Umhofer, LLP, counsel of record for Beverly A. Brown in this matter.  I am licensed to practice in the State of California, and admitted to practice before this Court.  I provide this Declaration in support of Defendant Beverly Brown's Motion to Strike Plaintiff Grant & Eisenhofer, P.A.'s ("G&E") Purported Attorney's Lien on Defendant Beverly Brown's Relator Recovery and Request for Order Releasing Funds.  I have personal knowledge of the maters stated in this Declaration and, if called upon to do so, I could and would competently testify thereto.

2.      Attached as **Exhibit A** to this Declaration is a true and correct copy of Dkt. No. 519 in the matter captioned *U.S. ex rel. Brown v. Celgene Corp.*, Case No. CV 10-3165-RGK-SS.

3.      On January 5, 2018, I emailed a proposed stipulation to Steven Basileo, counsel for G&E in this matter.  The proposed stipulation asked G&E to agree to release to Ms. Brown the undisputed portion of Ms. Brown's share of the settlement, $35,797,949.62, while the parties litigate the remaining $36,797,549.48, pursuant to G&E's claimed lien.  The proposed stipulation would preserve G&E's claim to 40% of Ms. Brown's share of the settlement held by the Court, or $29,038,199, plus an additional $7,759,350.48 in attorneys' fees and costs, for a total of $36,797,549.48.

4.      On January 9, 2018, I, along with my partner James Spertus, participated in a telephone call with Mr. Basileo pursuant to Local Rule 7-3. During the call, Mr. Basileo informed me that G&E would not enter into the stipulation, citing the lack of sufficient information about other money Ms. Brown may have received pursuant to her settlement with Celgene that is not the subject

DECLARATION OF SAMUEL A. JOSEPHS

of Ms. Brown's 28% share of her settlement with Celgene because G&E believes it may have a claim to more money.

5.     Following the parties' call, I sent an email to Mr. Basileo confirming G&E's position as stated on the call.  Mr. Basileo responded to my email, providing that G&E is open to the idea of releasing the undisputed funds, but requires more information so that it could properly evaluate the proposal.  Mr. Basileo asked that G&E be provided with a) information as to payments made by the state plaintiffs to Brown, b) information as to the $35 million in fees and expenses paid directly from Celgene to Brown and/or successor counsel, and c) the overall amount of fees and expenses incurred by successor counsel.  Mr. Basileo further stated that the proposed stipulation assumes that funds already received by Brown or successor counsel are somehow not disputed or not subject to G&E's lien, which he said is not the case, and stated that G&E requires the requested information so that it can determine the maximum amount potentially subject to G&E's lien, and thus ascertain the amount of undisputed funds.

6.     Notwithstanding any disputes about other funds, if G&E had not been terminated and its contract with Ms. Brown had been valid and not voided by Ms. Brown, its maximum entitlement to her statutory share from the United States was 40%, while Ms. Brown was entitled to 60% of the money paid by the United States.  Here that amount is $35,797,949.62.  G&E would not agree to pay this undisputed amount and continue litigating the validity of its lien and its purported entitlement to fees derived from other sources.

7.     Attached as **Exhibit B** to this Declaration is a true and correct copy of Dkt. No. 504-4 in the matter captioned *U.S. ex rel. Brown v. Celgene Corp.*, Case No. CV 10-3165-RGK-SS.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing facts are true and correct.

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1    Executed this 16th day of January, 2018, at Los Angeles, California.

2

3    Dated:  January 16, 2018        _____

4                                                    Samuel A. Josephs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

DECLARATION OF SAMUEL A. JOSEPHS

# EXHIBIT A

EXHIBIT A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

| Proceedings: | (IN CHAMBERS) Order Re: Motion for an Order (1) Awarding 30% Statutory Relator Share and (2) Ordering the United States to Immediately Make the Relator Share Payment (DE 504) |
|---|---|

## I.     INTRODUCTION

On April 27, 2010, Relator Beverly Brown ("Relator"), individually and on behalf of the United States of America ("the Government"), filed a *qui tam* action under the False Claims Act ("FCA") against Celgene Corporation ("Celgene"). The Government declined to intervene in the case, and Relator and her counsel continued the litigation on their own. On March 22, 2017, Relator's claim resulted in a $259,269,640 settlement paid by Celgene to the Government.

Presently before the Court is Relator's Motion for immediate disbursement of the maximum 30% relator share of the settlement under 31 U.S.C. § 3730(d)(2). With the Court's permission, the Government deposited the full 30% ($77,780,892) in the Court Registry pending this Court's order. The Government opposes Relator's request for the maximum relator share, asserting that the minimum 25% is reasonable. Relator's former counsel, Grant & Eisenhofer, P.A. ("G&E"), previously filed a notice of lien on Relator's recovery and opposes Relator's request that the Court immediately disburse the relator share to her.

For the following reasons, the Court **GRANTS in part** Relator's Motion.

## II.     FACTUAL BACKGROUND

Relator began working at Celgene in 2001. In late 2007, Relator became concerned because her manager instructed her to call physicians' offices to ask them to change billing codes associated with prescriptions of Celgene's drugs. Relator believed this practice was illegal. Relator reported the practice internally to management, and later contacted the FDA and consulted attorney Reuben Guttman ("Guttman"), who was then a lawyer with G&E. Relator claims she then realized that that Celgene had

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-03165-RGK-SS | | Date | December 15, 2017 |
|---|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | | |

been engaging in additional unlawful practices relating to Celgene's promotion of the drugs Thalomid and Revlimid. Relator initiated this qui tam action in April 2010, and continued to litigate the matter after the Government declined to intervene in October 2013. Her complaint alleged that Celgene engaged in an unlawful campaign to promote Thalomid and Revlimid for a wide variety of cancers, although the drugs were not approved by the FDA for any cancer use until 2005. Relator also alleged that Celgene paid kickbacks to physicians in exchange for prescriptions of its drugs and that some of those prescriptions were paid by Medicare, Medicaid programs, TRICARE, and the Department of Veterans Affairs.

To aid discovery, Relator provided thousands of pages of internal Celgene documents to the Government that she had collected during her employment, wore a wire to gather information during one of Celgene's national meetings, and participated in meetings with the Government. The Government produced health insurance data and on claims for Thalomid and Revlimid, in addition to declarations from government representatives on the claims data produced.

The case proceeded through summary judgment, several days of mediation, and substantial trial preparation in anticipation of an April 25, 2017 trial date. In March 2017, the parties reached a $259,269,640 settlement. The Government approved the settlement four months later, only two weeks before the continued trial date. Celgene paid the settlement in full to the United States on July 26, 2017. The Court then entered an order dismissing the action, but it retained jurisdiction "to adjudicate, if necessary, Relator Brown's claim to a share of the proceeds of the Civil Action pursuant to 31 U.S.C. § 3730(d)." Despite attempts to meet and confer, the Government and Relator were unable to reach an agreement on what share of the settlement she should receive for her role in the litigation.

When Relator first initiated the *qui tam* action, she retained Guttman and his firm G&E as counsel. Relator signed a G&E retainer agreement drafted by Guttman. The retainer agreement provided that G&E is entitled to its awarded fees and costs, as well as 40% of any amount awarded to Relator. The agreement omitted the following provision required under California law: "the fee is not set by law, but is negotiable between the attorney and client."[1] In April 2015, Guttman left G&E. Relator decided to retain Guttman as her counsel and terminated G&E. G&E formally withdrew as Relator's counsel on May 15, 2015. Following its termination, G&E filed a notice of lien in this case pursuant to its retainer agreement with Relator.

On August 10, 2017, G&E filed a separate action in district court ("G&E action") against Relator seeking in part to enforce its lien. *See Grant & Eisenhoffer, P.A. v. Relator*, Case No. CV 17-05968 PSG

---

[1] G&E and Relator dispute whether California law governs the contract.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-03165-RGK-SS | | Date | December 15, 2017 |
|----------|----------------------|---|------|-------------------|
| Title | *United States of America et al. v. Celgene Corporation* | | | |

(PJWx) (C.D. Cal. Aug. 10, 2017).[2] On September 15, 2017, the Government received a letter from G&E notifying the Government of its charging lien and asking the Government to withhold $41,359,350.48 from any amount distributed to Relator. In response, the Government filed an ex parte motion for an order to deposit $77,780,892—representing the maximum 30% relator share—into an interest-bearing account with the Court Registry, which the Court granted. Relator claims that G&E's lien is invalid because she voided the G&E fee agreement for its failure to comply with California Business and Professions Code section 6147.

## III.    DISCUSSION

Relator's Motion makes two requests. First, Relator seeks an order awarding her the maximum 30% relator share of the settlement. Second, Relator requests that the Court rule that G&E has no valid lien and order the relator share immediately released to her from the Court Registry. The Court addresses each in turn.

### A.    Relator Share

Under 31 U.S.C. § 3730(d)(2), if the Government does not proceed with an action under the FCA, the person who brings the action or settles the claim shall receive an amount that is not less than 25% or more than 30% of the proceeds of the action and shall be paid out of the proceeds.[3] The relator ultimately receives the amount within that statutory range that the Court deems to be reasonable. 31. U.S.C. § 3730(d)(2). Here, Relator argues she is entitled to the maximum 30% share. The Government counters that the statutory minimum of 25% is reasonable. G&E takes no position.

Several factors are relevant to the Court's consideration of what share is reasonable. Courts have considered (1) the degree and importance of the relator's participation, *see, e.g.*, *United States ex rel. Pratt v. Alliant Techsys., Inc.*, 50 F. Supp. 2d 942, 948 (C.D. Cal. 1999) (awarding a 28% share to a relator who was actively involved in the claim and made specific efforts to further the investigation); (2) whether the relator incurred considerable personal and professional expense in pursuing the action, *see, e.g.*, *United States ex rel. Pedicone v. Mazak Corp.*, 807 F. Supp. 1350, 1353 (S.D. Ohio 1992), *overruled on other grounds by United States ex rel. Smith v. Lampers,* 69 Fed. Appx. 719 (6th Cir. 2003) (awarding a 30% share to a relator who incurred considerable personal and professional expense in pursuing an FCA claim for the government); and (3) whether the relator promptly reported the fraud, *see, e.g., United States v. Gen. Elec.*, 808 F. Supp. 580, 584 (S.D. Ohio 1992) (awarding only a 22.5%

---

[2] G&E claims it filed another lawsuit over its fee dispute in the District of Columbia district court, *Grant & Eisenhofer P.A. v. Guttman v. Guttman, et al.*, Case No. 1:17-cv-07122-TJK, which has been transferred to the Central District but has not yet been assigned to a Court.

[3] Had the Government intervened, the relator would be entitled only to a 15–25% share. 31 U.S.C. §3730(d)(1).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-03165-RGK-SS | | Date | December 15, 2017 |
|---|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | | |

share in an intervened action where the relator failed to promptly report the fraud once he became aware of it).

The parties disagree on whether the amount of recovery is also an appropriate consideration in determining the reasonable relator share. Relator argues that the primary consideration should be the relator's contribution to the lawsuit and that the size of the settlement is irrelevant. In contrast, the Government argues that Courts should consider the size of the settlement and award a lower share where, as here, the settlement is large.

The text of 31 U.S.C. § 3730(d)(2) does not identify any factors that the court should consider when determining a reasonable relator share. The Court found no binding precedent on the issue, and lower courts differ in their approach. Some have refused to consider the amount of the total recovery as a relevant factor. *See United States ex rel. Merena v. SmithKline Beecham Corp.*, 52 F. Supp. 2d 420, 434 (E.D. Pa. 1998) (reasoning based on legislative history), *rev'd on other grounds*, 205 F.3d 97 (3d Cir. 2000); *United States ex rel. Alderson v. Quorum Health Grp., Inc.*, 171 F. Supp. 2d 1323, 1134 n. 37 (M.D. Fla. 2001) (same). Others factored the size of the recovery into their decision. *See United States ex rel. Harrison v. Westinghouse Savannah River Co.*, Case No. 1:94-2332-22, Dkt. 188, at 7–8 (D.S.C. Jul. 23, 2002) (providing no reasons for considering the amount of recovery); *Garibaldi v. Orleans Parish Sch. Bd.*, 46 F. Supp. 2d 546, 566 (E.D. L.A. 1999) (same), *rev'd on other grounds*, 244 F.3d 486 (5th Cir. 2001). The Court thus turns to legislative history to guide its determination.[4]

The primary purpose of the *qui tam* provisions of the FCA is to "set up incentives to supplement government enforcement of the Act by encouraging insiders privy to a fraud on the government to blow the whistle on the crime." *United States v. Northrop Corp.*, 59 F.3d 953, 963 (9th Cir. 1995). Recognizing the difficulty in detecting fraud, the lack of resources on the part of Federal enforcement agencies, and the significant threat facing both the federal treasury and national security, Congress undertook an extensive revision of the FCA to encourage more private enforcement suits by increasing incentives to bring claims. *Id.*

The Government argues that, given the large settlement, paying the statutory minimum of 25% of the settlement (or $64.8 million) would appropriately incentivize private enforcement suits. It argues that a higher amount would result in a windfall to the relator at the expense of the public fisc. Relator

---

[4] DOJ Guidelines list fourteen factors for consideration for a possible increase in relator share, and eleven factors for consideration for a possible decrease. Both sets list the size of recovery as a relevant consideration. These factors are meant to guide the Government in negotiations with relators, and are not binding on courts. Some courts nevertheless consider them in their analysis. *See, e.g., United States ex rel. Alderson v. Quorum Health Grp., Inc.*, 171 F. Supp. 2d 1323, 1333 (M.D. Fla. 2001). The Government's argument does not rely on them in this case, however, and so the court does not weigh them in its analysis.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-03165-RGK-SS | | Date | December 15, 2017 |
|----------|----------------------|---|------|-------------------|
| Title | *United States of America et al. v. Celgene Corporation* | | | |

counters that awarding a lower percentage to a relator who uncovers fraud of a greater magnitude and achieves a high settlement is contrary to the incentivizing goal of the statute. Legislative history supports Relator's position.

For example, contrary to the Government's argument, a Senate committee report reveals that it "staggered the allowable percentages of recovery" and gave courts discretion in determining awards in recognition that "the contribution of one person might be significantly more or less than the contribution of another." S. Rep. No. 99-345 at 28. In addition, Congress refused to impose a cap on the total amount a relator could recover, despite proposals that doing so was necessary to prevent the same "windfalls" that the Government now professedly fears. *See* 132 Cong. Rec. H9382 (daily ed. Oct. 7, 1986) (prepared statement of Assistant AG Willard) (proposing that Congress impose an upward limit on the amount of the relator's recovery). Moreover, the Senate Judiciary Committee characterized the statutory minimum as a sort of "finder's fee" paid to the relator for doing no more than filing the action. *See* S. Rep. No. 99-345, at 28. A higher percentage is warranted depending on the nature of the relator's participation. All of this suggests that Congress did not intend for the amount of recovery to influence the percentage awarded to the relator. Accordingly, focus instead on Relator's contribution to the litigation in determining the reasonable relator share.

Relator's involvement in this case was significant. She provided investigative assistance by preparing for and providing information in meetings with the Government, collecting thousands of documents and emails from her work at Celgene, and wearing a wire to a multi-day national meeting for Celgene. Relator reported the fraud internally to management, contacted the FDA and legal counsel, and initiated this action while still employed at Celgene, which placed her at risk for retaliation. She contributed significant personal time and expense by litigating this case for several years. Relator and her counsel defeated a summary judgment motion and achieved a notably large settlement before trial. Accordingly, this Court finds that an award of 28% of the proceeds is in line with Congress' intent to incentivize the public to bring forward and pursue claims.

### B.    Attorney Lien

G&E asserted a charging lien on the settlement proceeds in this case, which it now seeks to enforce in a separate action filed in the district court. An attorney's charging lien is "[t]he right of an attorney . . . to encumber money payable to the client . . . until the attorney's fees have been properly determined and paid." Lien, Black's Law Dictionary. The Court cannot disburse the relator share of the settlement proceeds to Relator until the validity and amount of the lien is determined. In her Motion, Relator requests that the Court declare the lien invalid and immediately distribute the relator share to her. G&E counters that the Court lacks jurisdiction to determine the validity of the lien and that the Court must hold the proceeds until the lien is adjudicated in a separate action. The Government takes no position.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | |

Relator argues the Court has ancillary jurisdiction over fee disputes between a party and her attorney. "Ancillary jurisdiction is the power of a court to adjudicate and determine matters incidental to the exercise of its primary jurisdiction over a cause under review." *United States v. Sumner,* 226 F.3d 1005, 1013 (9th Cir. 2000). It is well-established that "a federal court properly may exercise ancillary jurisdiction 'over attorney fee disputes collateral to the underlying litigation.'" *K.C. ex rel. Erica C. Torlakson*, 762 F.3d 963, 968 (9th Cir. 2014) (quoting *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004)). But "the exercise of ancillary jurisdiction over an attorney's fees dispute is discretionary." *Torlakson*, 762 F.3d at 971. Before exercising ancillary jurisdiction, a district court should consider whether such jurisdiction would (1) "permit disposition by a single court of claims that are . . . factually interdependent"; or (2) "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) (internal citations omitted).

The validity of the lien is not factually interdependent with Relator's claims against Celgene. Nor is adjudicating the validity of the lien necessary to effectuate the Court's order. The dispute poses no impediment to settlement—the Court already approved the settlement, Celgene paid the settlement in full, and the Court dismissed the case. The dispute has not prevented the Court from determining to what share of the settlement Relator is entitled. The only remaining issue is whether all 28% should be disbursed to Relator, or if some amount must be disbursed to G&E pursuant to their retainer agreement. Rather than spend its resources examining a contract unrelated to the merits of this case, the Court will issue its order conditioned on the separate, pending adjudication of the lien.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | |

#### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Relator's Motion as follows. The Court finds Relator is entitled to a relator share of 28% of the settlement. That amount will remain in the Court Registry pending adjudication of G&E's lien in either Case No. CV 17-05968 or Case No. CV 17-07122. The Court further orders that the remaining 2% (or $5,185,392.80) plus interest accrued be disbursed immediately to the United States.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer          _____

# EXHIBIT B

EXHIBIT B

Case 2:17-cv-05968-PSG-AFM Document 73 Filed 01/16/18 Page 57 of 68 Page ID #:1071
Case 2:10-cv-03165-RGK-SS Document 304-4 Filed 10/09/14 Page 18 of 78 Page ID
#:46882

1 Thomas H. Bienert, Jr., State Bar No. 135311
2 tbienert@bmkattorneys.com
  Michael R. Williams, State Bar No. 192222
3 mwilliams@bmkattorneys.com
4 BIENERT, MILLER & KATZMAN, PLC
  903 Calle Amanecer, Suite 350
5 San Clemente, California 92673
6 Tel: (949) 369-3700/Fax: (949) 369-3701

7 Reuben A. Guttman (*admitted pro hac vice*)
8 rguttman@gbblegal.com
  Traci L. Buschner (*admitted pro hac vice*)
9 tbuschner@gbblegal.com
  Justin S. Brooks (*admitted pro hac vice*)
10 jbrooks@gbblegal.com
11 Dan Guttman (*admitted pro hac vice*)
   diguttman@aol.com
12 GUTTMAN, BUSCHNER & BROOKS PLLC
13 1625 Massachusetts Ave., NW, Suite 500
   Washington, DC 20036
14 Tel: (202) 800-3001/Fax: (202) 827-0041

15
   Richard A. Harpootlian (*admitted pro hac vice*)
16 rah@harpootlianlaw.com
   Christopher P. Kenney (*admitted pro hac vice*)
17 cpk@harpootlianlaw.com
18 RICHARD A. HARPOOTLIAN, PA
   1410 Laurel Street
19 Post Office Box 1090 (29201)
   Columbia, South Carolina 29202
20 Tel: (803) 252-4848/Fax: (803) 252-4810

21
   Nancy Gertner (*admitted pro hac vice*)
22 ngertner@law.harvard.edu
23 Langdell 328
   1525 Massachusetts Ave.
24 Cambridge, Massachusetts 02138
25 Tel: (617) 851-3812

26
   Attorneys for Plaintiff - Relator
27 BEVERLY BROWN

28

---

DECLARATION OF REUBEN A. GUTTMAN

1
2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

3

4  UNITED STATES OF AMERICA, the
   States of CALIFORNIA, COLORADO,
5  CONNECTICUT, DELAWARE,
   FLORIDA, GEORGIA, HAWAII,
6  ILLINOIS, INDIANA, LOUISIANA,
7  MARYLAND, MASSACHUSETTS,
   MICHIGAN, MINNESOTA,
8  MONTANA, NEVADA, NEW
9  HAMPSHIRE, NEW JERSEY, NEW
   MEXICO, NEW YORK, NORTH
10 CAROLINA, OKLAHOMA, RHODE
11 ISLAND, TENNESSEE, TEXAS,
   VIRGINIA, WASHINGTON,
12 WISCONSIN, the DISTRICT OF
13 COLUMBIA, and the CITY OF
   CHICAGO,
14

15                    Plaintiffs,
16                    *Ex rel.*

17 BEVERLY BROWN,

18                    Plaintiff-Relator,
19 v.

20
21 CELGENE CORPORATION,

22                    Defendant.
23

Case No. 10-cv-03165 RGK (SSx)
Assigned to the Honorable R. Gary Klausner

**DECLARATION OF REUBEN A.
GUTTMAN IN SUPPORT OF
PLAINTIFF-RELATOR BEVERLY
BROWN'S MOTION FOR AN ORDER
(1) AWARDING 30% STATUTORY
RELATOR SHARE, AND (2)
ORDERING THE UNITED STATES TO
IMMEDIATELY MAKE THE
RELATOR SHARE PAYMENT TO
RELATOR**

[Filed concurrently with Notice of Motion
and Motion; Declarations of Beverly A.
Brown and Hon. Nancy Gertner (ret.)]

Hearing Date:     November 6, 2017
Hearing Time:     9:00 a.m.
Location:         Courtroom 850

24
25
26
27
28

Case 2:17-cv-05968-PSG-AFM Document 73-5 Filed 01/16/18 Page 59 of 68 Page ID #:10073
Case 2:10-cv-03165-RGK-SS Document 304-4 Filed 10/09/17 Page 38 of 78 Page ID
#:46884

1

**DECLARATION OF REUBEN A. GUTTMAN**

2     I, Reuben A. Guttman, declare as follows:

3         1.      I am a founding partner of Guttman, Buschner & Brooks PLLC ("GBB") and
4     lead counsel in this matter. I have personal knowledge of the matters stated herein and, if
5     called upon to do so, I could and would competently testify thereto.

6         2.      I make this declaration in support of Plaintiff-Relator Beverly Brown's Motion
7     for an Order (1) Awarding 30% Statutory Relator Share, and (2) Ordering the United States
8     to Immediately Make the Relator Share Payment to Relator.

9     **Ms. Brown and counsel's efforts on behalf of the Government**

10        3.      This matter has been pending before this Court for more than 7 years, since
11    April 2010. Throughout this entire period, Ms. Brown's assistance has been indispensable.

12        4.      I first met Ms. Brown in 2009. After initial phone discussions and
13    correspondence, I traveled to California with my current law partner, Traci Buschner, to
14    meet with Ms. Brown. I was very impressed with Ms. Brown – in particular by her ability
15    to synthesize and explain the relevant facts – and felt very strongly that she could bring a
16    meritorious and viable False Claims Act case against her then employer, Celgene
17    Corporation ("Celgene").

18        5.      After extensive discussions, Ms. Brown elected to retain me, through my
19    former firm, Grant & Eisenhofer (G&E), to pursue a False Claims Act case against Celgene
20    on behalf of the United States and other government payors. After working with Ms. Brown
21    to develop the case, we filed the action on April 27, 2010. Because the action was pending
22    in California, Jay Eisenhofer of G&E assigned a firm attorney licensed in California to
23    assist in the litigation. With regard to Ms. Brown, she provided assistance on the case from
24    that time through its successful conclusion this year.

25        6.      As is typical in False Claims Act cases, the case was filed under seal and
26    remained so while the government investigated and determined whether or not it would
27    intervene in the case.

28

Case 2:17-cv-05968-RSG-AFM Document 73-0 Filed 01/16/19 Page 60 of 68 Page ID #:1074
Case 2:10-cv-03165-RGK-SS Document 304-4 Filed 10/09/19 Page 48 of 78 Page ID
#:46885

1       7.    Ms. Brown provided valuable assistance to the Government during its

2  investigation period. She meticulously prepared for her meetings with the Government

3  during its investigation. She also provided the government with unfettered inside

4  knowledge of the fraud alleged in her complaint and thousands of documents supporting

5  her claims. These documents spanned 7 CDs.

6       8.    At the Government's request, Ms. Brown also wore a recording device while

7  attending Celgene's National Sales Meeting, while also meeting with government agents

8  multiple times during the event.

9       9.    In late 2013, the federal government declined to intervene in the case. The

10  state and municipal plaintiffs followed suit in early 2014. Statistically, few *qui tam*

11  plaintiffs elect to continue on with their cases after the government declines to intervene.

12  Ms. Brown, however, did decide to continue with the case. The vast majority of the work

13  and effort expended by Ms. Brown and her counsel occurred after that point.

14     10.    Specifically, the lion's share of work, expense, and risk began once depositions

15  started, and the case remained extremely active from that period until the Court approved

16  settlement. Since spring 2015, Ms. Brown and current counsel incurred over $3 million in

17  expenses alone litigating against multi-billion dollar Celgene and its two large international

18  law firms. The case was significantly delayed, and at increased costs with regard to expert

19  reports, because the Department of Human Services Centers for Medicare and Medicaid

20  Services (CMS) twice provided defective data to counsel.

21     11.    Among other things, Ms. Brown and current counsel:

22  • Reviewed roughly 4 million pages of documents produced by Celgene and

23       numerous additional productions from third parties, with many of the documents

24       produced belatedly while fact and expert depositions were ongoing;

25  • Took and defended 23 fact depositions in locations throughout the country,

26       including Atlanta, Dallas, Denver, New York, Los Angeles, Pennsylvania, and

27       Washington, D.C.;

28

DECLARATION OF REUBEN A. GUTTMAN

Case 2:17-cv-05968-PSG-AFM Document 73 Filed 01/16/19 Page 61 of 68 Page ID #:10075
Case 2:10-cv-03165-RGK-SS Document 350-4 Filed 10/09/17 Page 58 of 78 Page ID
#:46886

- Retained and worked closely with 4 nationally-renowned experts to educate them about the case, complete their analyses, and draft their initial, rebuttal, and supplemental reports;
- Took and defended 19 expert depositions in locations throughout the country, including Seattle, Los Angeles, Houston, New York, and Boston;
- Filed or responded to 9 separate discovery motions;
- Opposed and defeated the bulk of Celgene's motion for summary judgment, including preparing and filing a nearly 100-page list of uncontroverted facts with close to 400 exhibits, and a declaration from Ms. Brown that Judge King relied on heavily;
- Opposed Celgene's motion for reconsideration of the Court's summary judgment ruling or, alternatively, for interlocutory appeal to the Ninth Circuit;
- Prepared for and participated in three days of mediation and numerous follow-up discussions with mediators Hon. Layn Phillips (ret.) and Gary Fees (ret.); and
- Extensively prepared for a scheduled April 25, 2017 trial date, including preparing and filing 7 motions *in limine* and *Daubert* motions, while also preparing exhibit and witness lists, a memorandum of facts and contentions of law, jury instructions, special verdict forms, deposition designations, and witness outlines.

12. Ms. Brown's personal involvement in this case during discovery was critical to the case's success and the magnitude of recovery. Ms. Brown was a critical resource for me and her other attorneys as we furthered our factual and legal theories, engaged in extensive motion practice, prepared for key depositions, identified key and important documents, and otherwise moved the case toward a successful outcome.

13. Ms. Brown gave a full-day deposition, in which she was an extremely credible witness who substantially bolstered the claims before the Court. She also provided a lengthy declaration in opposition to Celgene's summary judgment motion (Dkt. No. 333-48), which Judge King cited repeatedly in denying summary judgment as to key aspects of Ms. Brown's claims. *See* Dkt. No. 371 at 2, 5, 27.

DECLARATION OF REUBEN A. GUTTMAN

1    14.    More specifically, Ms. Brown's declaration was the sole basis by which Judge

2  King found that that a jury should decide whether a 10-year statute of limitations applied,

3  rather than the shorter 6-year statute of limitations. Dkt. No. 371 at 27. This added 4 years

4  to the relevant damages period, preserving a significant amount of damages that otherwise

5  could have been disallowed before the case moved to trial. Significantly, some of Celgene's

6  most egregious conduct occurred during this earlier 4-year time frame.

7          **The Parties reach a $280 million settlement on the eve of trial**

8    15.    After the Court denied the majority of Celgene's Summary Judgment Motion,

9  we began to prepare for trial, which the Court had scheduled for April 25, 2017. Ms. Brown

10  and Celgene reached settlement in principle on March 22, 2017, subject to approval by the

11  United States and the other government plaintiffs. Upon notice that the parties had reached

12  a deal in principle, but without the government entities having approved the settlement, the

13  Court continued the trial date until July 25, 2017.

14    16.    We immediately informed representatives of the United States Department of

15  Justice of the principal terms of the settlement as soon as it was reached. On April 4, 2017,

16  current counsel also prepared a comprehensive memorandum for the Department of Justice

17  to assist with its approval process and familiarize it with the facts of the case. The United

18  States took approximately 3 months to approve all settlement terms.

19    17.    By early July, the government still had not approved the settlement, so we were

20  required to resume our trial preparations. Ms. Brown again assisted in these preparations.

21  Among other things, Ms. Brown assisted counsel in drafting Relator's Memorandum of

22  Facts and Contentions of Law, the preparation of witness outlines, and counsel's strategic

23  planning.

24    18.    The government finally did approve the settlement, and Ms. Brown, and

25  Celgene, executed a settlement agreement on July 12, 2017, less than two weeks before the

26  scheduled trial date.

27

28

DECLARATION OF REUBEN A. GUTTMAN

19.    Under the settlement terms, Celgene payed the United States $259,269,640 on July 26, 2017.  Celgene paid the balance of the $280 million to the various state and municipal plaintiffs.

**Efforts to negotiate Relator's share**

20.    On June 14, 2017, in anticipation of settlement approval and finalization, my office sent the United States Department of Justice ("DOJ") a detailed proposal for resolution of the statutory relator's share at a full 30 percent relator's share.  To allow the Government to focus attention on the settlement with Celgene, it was agreed that the Government would turn its attention to the matter of a Relator share after the settlement was concluded.

21.    After the settlement was finalized in late July 2017, I and my co-counsel followed up with DOJ through a number of follow-up calls and emails, and by providing additional authority, in an effort to support its request for relator share.  DOJ did not substantively respond.  We continued to follow up with DOJ throughout the first half of August 2017, with DOJ never providing a substantive response to our proposal for a 30 percent relator share.  True and correct copies of our emails exchanges with DOJ during this time period are attached to this Declaration as **Exhibit 1**.

22.    On August 15, 2017, having still received no substantive response from DOJ, my colleague Justin Brooks sent DOJ an email requesting a conference pursuant to Local Rule 7-3 regarding a potential motion by Ms. Brown to seek immediate payment of the minimum 25 percent relator's share pending ultimate resolution of the relator's share issue.  A true and correct copy of Mr. Brooks's August 15, 2017 email is attached to this Declaration as **Exhibit 2**.

23.    The Local Rule 7-3 conference with DOJ took place on August 22, 2017.  In a follow up discussion later that week, DOJ agreed that it would pay Relator her 25 percent minimum statutory relator's share immediately, and that Relator and DOJ would continue discussions on any additional amount of relator's share payment over 25% and up to 30%.

1  DOJ confirmed this agreement in an email dated August 30, 2017, a true and correct copy
2  of which is attached to this Declaration as **Exhibit 3**.

3      24.    On September 8, 2017, DOJ sent us an agreement for interim payment of the
4  25 percent relator share. A true and correct copy of DOJ's email and attached agreement
5  are attached to this Declaration as **Exhibit 4**. My co-counsel Richard Harpootlian
6  responded to DOJ the same day that the terms of the agreement were agreeable to us.

7      25.    On September 13, 2017, DOJ sent us an email stating that it expected to have
8  authority to make the minimum 25 percent relator share payment "within the next day or
9  so." A true and correct copy of DOJ's September 13, 2017 email is attached to this
10 Declaration as **Exhibit 5**.

11     **G&E sends DOJ a letter wrongly claiming to have a lien over Mr. Brown's**
12     **relator share award**

13     26.    On September 14, 2017, counsel for G&E emailed a letter to DOJ. At the time
14 it sent it letter, G&E had not represented Ms. Brown for nearly two and a half years.

15     27.    In its single-page letter to DOJ, G&E asserted that it "has an attorney's
16 charging lien" on Ms. Brown's recovery in this action, stating that "[t]he terms of the lien
17 are set forth in Plaintiff-Relator's retention agreement with Grant & Eisenhofer P.A. dated
18 October 19, 2009." G&E continued that it had "incurred fees and expenses of
19 $7,759,350.48 in representing" Ms. Brown and was entitled to recover this amount, *plus* a
20 full 40 percent contingency on Ms. Brown's recovery, bringing the claimed value of its
21 purported lien to $41,359,350.48. In its letter, G&E requested that the DOJ withhold
22 $41,359,350.48 from any relator share payments to Ms. Brown. A true and correct copy of
23 G&E's September 14, 2017 letter is attached to this Declaration as **Exhibit 6**.

24     28.    As to G&E's claimed fee and cost amount of $7,759,350.48, it is apparent that
25 G&E inflated its rates and otherwise improperly billed time to this matter. For instance,
26 documents generated in 2015, at around the time G&E withdrew from the case, show that
27 its actual hourly rates were substantially lower than those it used to calculate its claimed
28 $7,759,350.48 lodestar. In addition, based on discussions with at least one witness and

DECLARATION OF REUBEN A. GUTTMAN

1    other information, G&E has included hours in its purported fee and cost calculation that

2    were not, in fact, incurred on this case. Notably, G&E has failed to honor a long standing

3    request tendered by Ms. Brown to provide backup for its fees and costs.

4        29.    On September 18, 2017, without a Court Order and without any discernible

5    investigation as to the merits of G&E's assertion, DOJ sent a letter to Ms. Brown's counsel

6    stating that, based solely on the letter from G&E, DOJ would not disburse the previously

7    agreed-upon 25 percent interim relator share payment to Ms. Brown unless G&E consented

8    in writing to such disbursement. A true and correct copy of DOJ's September 18, 2017

9    letter is attached to this Declaration as **Exhibit 7**.

10       30.    On September 19, 2017, following receipt of DOJ's letter, Mr. Harpootlian

11    requested a conference pursuant to Local Rule 7-3 addressing two topics: (1) DOJ's refusal

12    to pay any funds to Ms. Brown based on the unsworn and unsupported G&E letter; and

13    (2) Relator's more than three-month old proposal that she receive a 30 percent relator share.

14       31.    During our conference with DOJ, which took place on September 26, 2017,

15    we informed DOJ of the following facts, all of which G&E had omitted from or

16    misrepresented in its letter:

17      •   The G&E Fee Agreement, upon which G&E expressly based its purported lien, failed

18        to comply with California law and was therefore voidable at Ms. Brown's election;

19      •   Ms. Brown had exercised her right to void the G&E Fee Agreement;

20      •   With a void fee agreement, G&E had no lien rights under California law and thus no

21        basis to demand that DOJ withhold any funds from Ms. Brown;

22      •   G&E had filed suit against Ms. Brown in the Central District of California more than

23        a month earlier, but had not even served the lawsuit on her; and

24      •   Under California law, G&E is entitled to, at the absolute most, a *quantum meruit*

25        recovery based on its claimed, but unsupported, $7.7 million in fees and costs, which

26        is a fraction of the $41.3 million it was asking DOJ to withhold.

27

28

DECLARATION OF REUBEN A. GUTTMAN

32.    Despite presentment of the facts and law, and absent any apparent investigation into the facts, DOJ remained steadfast in its position that the G&E letter would govern its payment.  DOJ proposed to deposit the relator share with this Court.

33.    Attached to this Declaration as Exhibit 8 is a true and correct copy of a letter sent by David Wiechert, the lawyer who is representing Mr. Harpootlian's firm and Bienert, Miller & Katzman in the lawsuit filed against them by G&E, to counsel for G&E pointing out the omissions and misrepresentations in G&E's letter to DOJ.

34.    On the issue of 30 percent being the appropriate relator's share, DOJ declined to offer Ms. Brown anything more than the statutory minimum 25 percent, instead stating that Ms. Brown should simply propose a different percentage.  At no point in its discussions with Ms. Brown's counsel has DOJ offered any basis for either its statutory minimum offer or its rejection of Ms. Brown's 30 percent proposal, other than to state that Ms. Brown should be satisfied with a 25 percent relator share because it is "a lot of money."

35.    Unlike the United States, the State plaintiffs engaged in prompt and meaningful discussions with us regarding the resolution of a relator share.  Ms. Brown reached agreement with the State plaintiffs for a relator share of 28.5 percent as to their portion of the settlement.

**G&E files but does not serve a lawsuit against Ms. Brown**

36.    On August 10, 2017, G&E filed a lawsuit against Ms. Brown and my co-counsel in this case, Bienert, Miller & Katzman and Richard Harpootlian, P.A.  A true and correct copy of G&E's Complaint, as downloaded from the Court's Pacer website, is attached to this Declaration as **Exhibit 9**.  The case has been assigned to Judge Phillip S. Gutierrez.

37.    On September 29, 2017, G&E filed Amended Complaint in its suit against Ms. Brown and my co-counsel.  A true and correct copy of G&E's Amended Complaint, as downloaded from the Court's Pacer website, is attached to this Declaration as **Exhibit 10**.

38.    To my knowledge, though its lawsuit against Ms. Brown has been pending for almost two months, G&E has not served either her or the other defendants with either the

DECLARATION OF REUBEN A. GUTTMAN

Case 2:17-cv-05969-RSS-AFM Document 78-4 Filed 01/16/18 Page 67 of 68 Page ID #:1081
Case 2:10-cv-08165-RGK-SS Document 804-4 Filed 10/09/17 Page 10 of 789 Page ID
#:46892

1    original Complaint or the Amended Complaint. The Court's docket does not reflect proof

2    of any such service.

3        I declare under penalty of perjury under the laws of the United States of America, the

4    State of California, and the District of Columbia that the foregoing is true and correct.

5    Executed on October 9, 2017, at Washington, District of Columbia.

 

 

                                  REUBEN A. GUTTMAN

DECLARATION OF REUBEN A. GUTTMAN

## CERTIFICATE OF SERVICE

I, Samuel Josephs, an employee of Spertus, Landes & Umhofer, LLP located at 1990 S. Bundy Drive, Suite 705 Los Angeles, CA 90025, declare under penalty of perjury that I am over the age of eighteen (18) and not a party to the above-entitled proceeding.

On January 16, 2018, I served the forgoing documents, described as

**DEFENDANT BEVERLY BROWN'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF GRANT & EISENHOFER, P.A.'S PURPORTED ATTORNEY'S LIEN ON DEFENDANT BEVERLY BROWN'S RELATOR RECOVERY AND REQUEST FOR ORDER RELEASING FUNDS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BEVERLY BROWN; DECLARATION OF SAMUEL A. JOSEPHS**

on all interested parties as follows:

[ ]   **BY MAIL:** I caused such envelope(s) to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid to the office of the addressee(s) as indicated on the attached service list. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

[X]   **BY E-MAIL:** I caused a copy to be transmitted electronically by filing the foregoing with the clerk of the District Court using its ECF system, which electronically notifies counsel for that party.

[ ]   **BY PERSONAL SERVICE:** I personally delivered the document listed above to the persons at the address set forth below. I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 16, 2018, at Los Angeles, California.

/s/ *Samuel A. Josephs*
Samuel Josephs

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711